# Duffy v. Alta Friendly Society.

*Beneficial associations — Forfeiture of membership — Reinstatement — Fraud.*

A certificate of membership in a beneficial association stipulated that all dues should be paid promptly when due, otherwise the certificate should be void. The by-laws which by the certificate were made a part of the contract of membership also provided that the dues should be paid promptly, and if not paid to a collector, should be paid at the office of the

association within three days from the day they should become due. The by-laws also provided that a member might be reinstated by paying all arrearages, if at the time of the payment he were " in good health and free from all ailments and complaints." The dues of a member which became due on the 15th of a month were not paid until the 27th of the month. The evidence showed that on the 22d a member was confined to his house, that on the 25th he was visited by a physician, that on the same day he made application for sick benefits, and that on the 27th he signed a certificate in the presence of the beneficiary to the effect that he was free from all ailments or complaints, and that he had not consulted or been prescribed for by any physician within the preceding thirty days. He died about six weeks afterwards as a result of the illness which started on the 22d. *Held,* that the acceptance of the dues on the 27th did not serve to reinstate the member.

Argued April 22, 1901. Appeal, No. 149, April T., 1901, by defendant, from judgment of C. P. No. 2, Allegheny Co., July T., 1899, No. 172, on verdict for plaintiff in case of Emma B. Duffy v. The Alta Friendly Society. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Assumpsit for death benefits. Before FRAZER, P. J.
The facts appear by the opinion of the Superior Court.
The court refused to give binding instructions for defendant.
Verdict and judgment for plaintiff for $270.62. Defendant appealed.

*Error assigned* among others was in refusing to give binding instructions for plaintiff.

*L. K. Porter,* with him *S. G. Porter,* for appellant.—Where it is expressly agreed that the contract shall be void in case of failure to pay a premium at the time agreed, such failure renders the policy " null and void:" Bliss on Life Insurance, 273 ; Bacon's Benefit Societies and Life Ins. sec. 354; May on Insurance, sec. 341; Biddle on Insurance, sec. 895; Dickinson v. A. O. U. W., 159 Pa. 258.

In policies of life insurance, time is material, and of the essence of the contract, and nonpayment at the day involves absolute forfeiture if such be the terms of the contract: Klein v. N. H. Life Ins. Co., 104 U. S. 88 ; N. Y. Life Ins. Co. v. Statham, 93 U. S. 24 ; Lantz v. Vermont Life Ins. Co., 139 Pa.

546; Holly v. Metropolitan Life Ins. Co., 105 N. Y. 437; Ayer v. New England Mutual Life Ins. Co., 109 Mass. 430; Insurance Co. v. Robinson, 40 Ohio, 270; Willcuts v. Northwestern Mutual Life Ins. Co., 81 Ind. 300, Ewald v. Northwestern Mutual Life Ins. Co., 60 Wis. 431; Marston v. Massachusetts Life Ins. Co., 59 N. H. 92.

It is well settled, that if the by-laws of a society require that a member must comply with certain conditions in order to become reinstated, all such conditions must be complied with: Bacon's Benefit Societies & Life Ins. sec. 385; Dickinson v. A. O. U. W., 159 Pa. 258; Ronald v. Mutual Reserve Fund Life Assn., 132 N. Y. 378; Grand Lodge of A. O. U. W. v. Cressey, 47 Ill. App. 616; Marshall v. Women's Mutual Ins., etc., Co., 11 N. Y. Supp. 700; Garbutt v. Citizens' Life, etc., Association, 51 N. W. Repr. 148; Richards v. Maine Benefit Assn., 85 Me. 99; Gross-Loge v. Laercher, 41 Ill. App. 462; Supreme Lodge Knights of Honor v. Keener, 25 S. W. Repr. 1084.

*E. J. McKenna,* with him *C. F. McKenna,* for appellee.— Where a party to a contract or transaction induces another to act upon a reasonable belief that he will waive certain rights or terms, he will be estopped to insist upon such rights or terms to the injury of one misled by his conduct: Helme v. Philadelphia Life Ins. Co., 61 Pa. 107; Burleigh v. Gebhard Fire Ins. Co., 90 N. Y. 220.

The term "good health," when used in a policy of life insurance, means that the applicant has no grave, important or serious disease, and is free from any ailment that seriously affects the general soundness and healthfulness of the system: Barnes v. Fidelity Mutual Life Assn., 191 Pa. 618; Goucher v. Northwestern Traveling Men's Assn., 20 Fed. Repr. 596.

OPINION BY WILLIAM W. PORTER, J., July 25, 1901:

On April 15, 1898, Joseph C. Duffy received a certificate of membership in the Alta Friendly Society, insuring his life in favor of Emma B. Duffy, his wife, in the sum of $250. The certificate provided that the sum of $1.67 should be paid on the 15th day of every month and that "all dues and assessments must be promptly paid when due, otherwise this certifi-

cate shall be absolutely null and void." By the terms of the certificate the by-laws of the society are made a part of the contract. In the by-laws it is provided that the monthly dues shall be payable at the office of the society; that collection by agents is a courtesy to the member; that on failure of an agent to collect the moneys when due it shall be the duty of the member to pay the same at the Philadelphia office of the society within three days from the day the same shall be due and payable; that "members must pay all dues and moneys promptly when due and payable to the society, and in the event of their failure or refusal to do so, they shall forfeit their memberships in the society and their certificates of memberships shall become ipso facto null and void. And all dues and moneys paid by them to the society shall be absolutely forfeited to and vest exclusively in the society. Every member must pay the dues and moneys payable to the society when due whether the society be indebted to him on account of sickness or accident or not. Otherwise, his certificate of membership shall be null and void and he shall not be entitled to any benefits whatever."

By section 6, it is provided that " delinquent members or those whose certificates have become forfeited may be reinstated, if in good health, by paying all arrearages in dues or other moneys to the society. But no such delinquent member shall be reinstated or restored to membership who is not in good health and free from all ailments and complaints, and no officer, agent or employee of the society shall be permitted to accept or receive dues or other moneys from such delinquent members unless they are in good health and free from all ailments and complaints, as aforesaid. And should any such delinquent member, not in good health and free from all ailments and complaints, or any person on his or her behalf, pay to the society, or any officer, collector, agent, or employee thereof, any dues or moneys in arrears, the same shall be returned to such member and such payment shall not reinstate or restore to membership such delinquent, but his membership shall be and continue forfeited, and his certificate shall be and continue to be null and void. And any such delinquent member, not in good health and free from all ailments and complaints, shall be guilty of a fraud upon the society by paying or attempting to pay any officer, collector, agent or employee thereof, any dues or other moneys in

arrears for the purpose of being reinstated or restored to membership in the society."

On January 15, 1899, an instalment of dues became payable. The instalment was not paid until January 27, 1899. Under the terms of the contract of insurance the payment was not prompt and could not operate to reinstate the insured, unless he was, at the time of payment, in good health and free from all ailments and complaints. The terms of the contract, set forth above, make this conclusion so inevitable as to require no discussion.

Assuming the money to have been paid and accepted on January 27, in good faith, it thus becomes important to ascertain the condition of the health of the insured at the time of the payment of the delinquent dues. The plaintiff, the beneficiary under the policy and the wife of the insured, says that her husband on January 27, "was ailing. He had been sick and had not gone out," and that he was confined to the house on January 22, 1899. She was asked, "How long was it before he took the illness that caused his death?" to which she replied: "I couldn't just say. He was ailing all the time. He went to bed in February. He had been over home working around. His father wouldn't let him work much." A physician who attended the insured says that he visited him from January 25, 1899, until February 12, 1899, and that he was either in bed on January 25, or was sitting up a part of the day. On February 15, the insured himself made written application to the defendant association for sick benefits under his contract. In this application he says that he consulted his physician on January 25; that he quit work January 22; that he was confined to the house on January 22; and was so confined on February 13; and "that he was confined to bed two weeks." The physician, before referred to, gave a certificate accompanying the application for sick benefits, in which he says that his first visit to the insured was on January 25, 1899, and his last on February 13; that the insured was sick with the grippe, and that on February 13, the insured was confined to the house; that he had then been confined to bed for two weeks; and that he was not convalescent. One witness says that the insured was not sick in bed on January 25, but was out

of the house. She also says that she did not know that a physician was then attending him.

The insured died on March 19, 1899. The physician says of the illness with which the insured was afflicted on January 25, that "death would be the ultimate outcome of that sickness, though I did not see him after the 12th of February." On the facts thus exhibited there seems to be no real conflict in testimony regarding the condition of the health of the insured on January 27, 1899, when the dues which were due on January 15 were paid, and the payment of which, it is contended, reinstated the contract of insurance. He was, sick and ailing within the meaning of the policy. If this be so, then under the very terms of the by-laws, the contract was dead and could not be vitalized by the payment of the delinquent dues.

But apart from this, repudiation of liability by the association was justified on discovery of the falsity of the certificate of health (hereinafter referred to) given on January 27, when the delinquent dues were paid. It is argued that the society accepted the dues payable on February 15, and that by so doing they acknowledged the contract of insurance to be in life. When the payment was made on January 27, 1899, a certificate was given to the agent of the society, setting forth in substance that the insured was in good health and was "free from all ailments, complaints or injuries, and that said member has not consulted or been prescribed for by any physician within the last thirty days." This certificate was signed " J. C. Duffy, Miss Josie Smith." Miss Smith was the niece of the insured by marriage. She says that she signed his name without authority and without knowledge of the contents of the paper. The beneficiary, the wife of the insured, was present when the certificate was given. It is alleged that the society was deceived by this certificate as to the state of the health of the insured and was thereby induced to accept the delinquent and the February dues. The certificate was false in its terms and the beneficiary can therefore not benefit by a deception practiced apparently in her behalf and in her presence. It is shown by some of the testimony that the agent of the company induced the signing of the certificate of health on behalf of the insured, and that he procured the signature thereto in the presence of the beneficiary without explaining the contents and

without the signer or the beneficiary knowing the contents of the paper. This is denied by the agent, but it is impossible to see how the facts asserted can be used in aid of the plaintiff. The certificate of health was intended to effect a reinstatement of a void policy. The beneficiary being present and now attempting to benefit by the certificate, must be charged with knowledge of its purpose and contents. If it operated as a fraud, the fact that the agent of the company participated in or inspired the deception cannot change its character or effect. No authority to an agent to aid in deceiving his employer, can be implied. It is argued that the delay of the association in declaring the contract void, estops them from setting up the voidance. The discovery of the falsity of the health certificate was made through the application for sick benefits in February. When the next monthly payment of dues was attempted to be made in March it was declined; and the amounts paid in January and February were tendered back. No harm, therefore, resulted to the plaintiff by the delay, and it may be that no duty devolved on the association to notify the plaintiff of a forfeiture, which resulted under the very terms of the contract: Lantz v. Vermont Life Ins. Co., 139 Pa. 561.

On all the facts presented in the case, we are of opinion that the defendant was entitled to an affirmance of the point, requesting the court to charge the jury that under all the evidence the plaintiff is not entitled to recover.

The judgment is, therefore, reversed.