## Malchinsky *v.* The Mutual Life Insurance Company of New York, Appellant.

*Insurance—Life insurance—Policy—Reinstatement—Waiver.*

In an action of assumpsit on a policy of life insurance it appeared that the insured's policy had lapsed; that the defendant's agent and district manager had interviewed the insured, and that as a result of their negotiations the insured had given a check payable to the defendant for the three premiums in arrears, with interest. The check was put in process of collection and paid in due course, and charged to the account of the insured.

It also appeared that in the course of these negotiations additional insurance to the amount of $10,000 had been mentioned, and that the insured had gone to the company's physician for an examination, which had been postponed at the instance of the physician because the formal application had not then been received by him. The insured did not again appear for examination, and shortly thereafter died.

The policy contained a provision that it could be reinstated at any time within three years from date of default in payment of any premium, upon evidence of insurability satisfactory to the company and upon payment of the arrears of premiums with interest thereon at the rate of five per centum per annum.

*Held*, that the case was for the jury on the question of whether or not the insurance company had waived the requirement as to proof of insurability by the unconditional acceptance of the check for the premiums in arrears and the retention of its proceeds for a considerable period of time without specifically requiring a further medical examination.

Argued December 8, 1926. Appeal No. 303, October T., 1926, by defendant from judgment of C. P. Schuylkill County, March T., 1924, No. 536, in the case of

Samuel Malchinsky to use of Rose March v. The Mutual Life Insurance Company of New York. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN and CUNNINGHAM, JJ. Affirmed.

Assumpsit on policy of life insurance. Before BERGER, J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff in the sum of $2,316, and judgment thereon. Defendant appealed.

*Errors assigned* were the charge of the Court, answers to points, and refusal of defendant's motion for judgment non obstante veredicto.

*Geo. M. Roads,* and with him *Knapp, O'Malley, Hill & Harris,* for appellant.—There was no evidence to warrant the finding that the defendant had waived the requirement of the proof of defendant's insurability: Beatty v. Lycoming Co. Mut. Ins. Co., 66 Pa. 9; Shay v. Phoenix Accident & Sick Benefit Assn., 28 Pa. Superior Ct. 527; Cooper v. Belt Auto Indemnity Assn., 79 Pa. Superior Ct. Reports, 479; Gould v. Ins. Co., 134 P. S. R. p. 570; Ryan v. Prudential Ins. Co., 33 Pa. Superior Ct. 364; New York Life Insurance Company v. Duffs Admtr., 270 S. W. 51; Jefferson Standard Life Ins. Co. v. Hicks, 254 S. W. 1033; Western Life Indemnity Company v. Bartlett, 145 N. E. 786; Capital Fire Ins. Co. v. Shearwood, 112 S. W. (Ark.) 878.

*G. H. Gerber,* and with him *A. D. Knittle,* for appellee.

OPINION BY CUNNINGHAM, J., March 3, 1927:

Under date of March 28, 1919, the Mutual Life Insurance Company of New York, defendant below and

appellant here, issued a twenty-year endowment policy of insurance on the life of William Malchinsky for $2,000, in which his father, Samuel Malchinsky, was named as beneficiary. The annual premiums of $100 each were paid on this policy for two years but default was made in the payment of the premium due March 28, 1921, and nothing was paid on account of the premiums due on this policy until September 17, 1923, upon which date the premiums in arrears, together with interest thereon at five per cent, aggregated $323.13. When this insurance was written the insured lived in Allentown, Pa., but moved to Pottsville, Pa., prior to September, 1923, having in the meantime changed his surname from Malchinsky to March. The assured died suddenly on September 30, 1923, and the beneficiary having assigned all his rights under the policy to his widow, Rose March, suit was brought to her use to recover the amount of the policy. Appellant defended upon the ground that the policy had lapsed by reason of the non-payment of the premium due March 29, 1921, and had never been reinstated, but the plaintiff contended that the policy had been reinstated on September 17, 1923, through the unconditional acceptance and cashing by appellant of the check of the insured for said sum of $323.13, and incidentally that appellant had impliedly waived the submission of any particular kind or amount of evidence of insurability, in addition to that submitted when the policy was written, as one of the conditions of reinstatement. At the conclusion of the testimony the learned trial judge refused defendant's request for binding instructions and submitted the case to the jury. The verdict was in favor of the plaintiff for the amount of the policy with interest; defendant's motions for a new trial and for judgment non obstante were overruled and this appeal was taken from the judgment entered on the verdict. The policy contained the fol-

lowing applicable provisions with respect to the payment of premiums and reinstatement: "Premiums— All premiums are payable in advance...... A grace of thirty-one days shall be granted for the payment of every premium after the first...... If any premium be not paid before the end of the period of grace, then this policy shall immediately cease and become void, and all premiums previously paid shall be forfeited to the company except as hereinafter provided.

"Reinstatement—Unless ...... the term for which the insurance has been continued shall have expired, this policy may be reinstated at any time within three years from date of default in payment of any premium, upon evidence of insurability satisfactory to the company and upon payment of the arrears of premiums with interest thereon at the rate of five per centum per annum." Many of the material facts were not in dispute but there was a serious conflict in the evidence with respect to several important matters. Among the uncontroverted facts are these: By reason of the payment of the second premium the insured became entitled to receive the sum of $21.81, in the nature of a dividend which could be paid in cash, and a check for this amount was drawn in his favor. On account of his change of name and residence this check was not promptly delivered but on September 17, 1923, Lawrence Judson, a district manager for the defendant, accompanied by Frederick Vonderheiden, an agent working under him, called at the residence of the insured and delivered this check to him. At that time these representatives of defendant opened negotiations with the insured, who was then apparently in good health, looking toward the reinstatement of the lapsed policy and the taking out of a new policy in the sum of $10,000. As a result of the negotiations the insured gave his check, payable to defendant, for the three premiums in arrears, with interest, in the above men-

tioned total amount of $323.13. The body of the check was written by the insured's wife and at the request of Judson she wrote on the back thereof "Premium paid from March 28/21 to March 28/24, plus interest, Pol. 2582401." This check, dated September 17, 1923, was handed to Judson and came into the hands of John H. Blackman, of New York, a manager of defendant company, who endorsed it over to the Treasurers National Bank for deposit to the credit of defendant. It was put in process of collection on September 20th and was paid in due course and charged to the account of the insured September 22, 1923. By direction of Judson he presented himself to Dr. A. S. Ryland, the medical examiner of the company at Pottsville, at five o'clock on the afternoon of the next day for an examination. Dr. Ryland told him he did not have the application blank at that time and that he might come in at any later time during office hours. The insured did not again visit Dr. Ryland's office and, as stated, died September 30, 1923. Judson and Vonderheiden learned of his death the next day. From September 17, 1923, to the date of his death there was no communication between the defendant or any of its representatives and the insured relative to the reinstatement of the policy but on October 9, 1923, Judson and Vonderheiden called on his widow and had a conversation, the purport of which is in dispute under the testimony. On October 25, 1923, John C. Hughes, an assistant manager of the defendant company at Scranton, accompanied by Judson tendered Mrs. March the amount of the check, $323.13, in cash but without interest, which tender was refused.

There is a sharp conflict in the testimony with respect to some of the circumstances connected with the giving of the check by the insured on September 17, 1923, in payment of the arrears of premiums and also with relation to the conversation between the repre-

sentatives of defendant and the plaintiff on October 9,
1923. Mrs. March, after testifying with respect to the
giving of the check for the premiums in arrears and
the request of Judson and Vonderheiden that the policy
be revived and a new one taken out, and, after deny-
ing that Judson asked her husband for certain infor-
mation and put his answers down on paper, continued
her testimony thus: "Q. Did not Mr. Judson tell your
husband that he would have to be examined by a
doctor? A. No, sir. Q. In order to be reinstated?
A. No, sir. He told him to give him that check for
$323.13 and he would be reinstated, and he returned
him a dividend check for $21.81, that closed the deal."
She testified further that she had no knowledge that
her husband had gone to Dr. Ryland for examination.
Referring to the visit of Judson to her home on Octo-
ber 9th, Mrs. March denied that he said anything
about returning the premiums. On the contrary she
testified, "there was no question arising as to the
policy not being in force. He told me as soon as the
death certificate was filled out I would get the face
value of the policy." Referring to the tender on Oc-
tober 25th, and in response to an inquiry with respect
to what Judson told her about the policy she replied
"He told me he would have to tender the money,
and when I asked him the reason for it he said those
were the instructions of the company in spite of what
he had spoken with me at the time he was up at my
home." This testimony was contradicted by Judson
who testified that Vonderheiden and he went to the
home of the insured "for the purpose of making nego-
tiations to reinstate this policy"; that they told the
insured the amount required to reinstate the policy
"and also that it would be necessary for him to pass
a physical examination for reestablishing the policy
before our regular examiner, who is Dr. Ryland in
Pottsville"; that a blank, produced at the trial as

Exhibit No. 5 but not admitted in evidence, was filled out at that time but the insured was not asked to sign it because it was necessary to have it signed in the presence of the examining physician; that he told the insured if he would give the check the policy could be reinstated "providing he was in good physical condition"; that an appointment was made for the insured to meet the doctor on the following evening; and that the application for reinstating the policy was left with Dr. Ryland until it was returned to Judson after the death of the insured.  Judson further testified that on the visit of October 9th to Mrs. March he told her that the policy had not been reinstated and that "the company would be willing to return the amount of the check."  Judson was corroborated by Vonderheiden who added, with respect to the interview on September 17, 1923, that Judson told the insured he would take his check and "would send it to the company to hold for collection."  This witness also testified that a few days after September 17th he met Mrs. March on the street, at which time she told him that her husband had not gone back to see the doctor by reason of the observance of a religious holiday. Dr. Ryland testified that the insured came to his office on the evening of September 18, 1923, and stated that "he was there for an examination"; that on the same evening Judson brought to his office after the insured had left the unsigned application for reinstatement; that the witness told the insured "he could come back at any time during office hours after that" but no date was fixed; and that the insured did not return.  The learned counsel for appellant have filed fifteen assignments of error which naturally divide themselves into two classes: (1) Those relating to the refusal of binding instructions and the overruling of their motion for judgment non obstante, under which they seek to have judgment entered in their favor, and (2) those

based upon alleged trial errors which, if sustained, would result in a reversal with a venire.

1. The main proposition in behalf of appellant under the first division of its assignments is that the trial judge erred in refusing binding instructions and in submitting to the jury the question whether defendant had a reasonable time after the receipt of the check to determine what its action would be and whether the retention of the premiums indicated a conclusion to revive the policy. The question for us in disposing of these assignments is whether binding instructions would have been proper (Dalmas v. Kemble, 215 Pa. 410; Shannon v. McHenry, 219 Pa. 267), and in applying this test we are to consider the evidence in the light most advantageous to plaintiff, resolving the conflicts therein in her favor and giving her the benefit of every fact and inference of fact pertinent to the issue which a jury could legitimately find from the evidence: Uhler v. Jones, 78 Pa. Superior Ct. 313; Mountain v. American Window Glass Co., 263 Pa. 181; Strawbridge, App., v. Hawthorne, 47 Pa. Superior Ct. 647, 649. This court had occasion to consider and determine in White v. Metropolitan Life Insurance Co., App., 22 Pa. Superior Ct. 501, issues similar in character to those arising in this case and the conclusions there reached, as expressed in the opinion written by President Judge Rice, are of assistance in disposing of the assignments now under discussion. There, as here, the policy had lapsed by reason of non-payment of premiums but could be revived "upon payment of all arrears and the presentation of evidence satisfactory to the company of the sound health of the insured." On November 24, 1896, there was paid to the agent of the defendant in that case, with the intention of reviving the policy, a sum of money sufficient to satisfy all arrears and pay the premiums up to February, 1897. It is equally true in the present case that

the amount paid was sufficient to carry the policy until March, 1924. In the case cited defendant's agent gave a receipt for the money reciting that it was a deposit made along with a revival application and containing this language "No obligation is incurred by said company by reason of this deposit. If application is accepted by said company in accordance with the warranty signed this date, the undersigned will pay the money to the company upon the revived policy, otherwise will return the deposit." There was endorsed on the back of the receipt a direction to the effect that if the holder should not receive the policy or the return of the money within a specified time the secretary of the company in New York was to be notified, stating the name of the agent and particulars. The insured died on January 1, 1897, about five weeks after the receipt of the money by the company and there had been no offer to return the money prior to that time, nor was any demand made for evidence of the sound health of the insured. The court below in that case, as in this, submitted to the jury the question whether the company had a reasonable time within which to determine what its action would be and accompanied the submission of that question with instructions to the effect that if the company retained the money after the lapse of a reasonable time then it was for the jury to say whether such retention was an approval of the policy as it existed and indicated a determination to revive it. In affirming the judgment on the verdict in favor of the plaintiff this court said "Nor are we prepared to give our assent to a construction of the revival clause which would relieve the company under any and all circumstances from the obligation of indicating to the policy holder the kind of evidence that would be satisfactory. It is clear, however, that mere conditional acceptance of the premiums in arrear under the circumstances stated at the outset of this opinion

would not, of itself, revive the policy. The company was entitled to a reasonable time within which to determine whether it would accept the application for revival upon the evidence already in its possession or would demand the production of other evidence, and if so, to determine what its character should be. But where, as was the case here, nothing was said upon the subject at the time of the payment of the money or later, and the money was retained by the company beyond the reasonable time above indicated, and especially if it was sufficient in amount to cover not only past but future dues, the natural and reasonable inference would be that the company was satisfied as to the soundness of the health of the insured and waived the production by the policy holder of evidence of that fact. We cannot say that under such circumstances the attempted revival of the policy would be defeated by the omission of the policy holder to take the initiative and to proceed with the production of evidence until the company expressed satisfaction with it both as to quantum and quality.'' The case at bar differs from the one from which we have just quoted chiefly in the fact that there was nothing conditional about the payment of the amount demanded by defendant as one of the conditions of reinstatement. The only testimony indicating anything of a conditional character is that of Vonderheiden who testified that Judson told the insured that ''He would send it [the check] to the company to hold for collection.'' This was denied by Mrs. March and the fact is that the check was not held for collection by the company but was cashed as promptly as possible and the proceeds retained until October 25, 1923. The evidence established that the defendant accepted a sum of money sufficient to pay the premiums in arrears and to carry the policy until March, 1924, unconditionally and with knowledge that no report had been made by its medical examiner

with respect to insurability and, if the trial judge had determined as a matter of law that defendant was estopped under such circumstances from asserting that it did not reinstate the policy, defendant would probably have had but slight ground for complaint.  There was more here than mere silence.  The principle that if an insurer accepts payment of a premium, with knowledge that a fact exists which, by the terms of the policy, will render the contract of insurance void, the acceptance of the premium is a waiver of the right to void the policy for such breach, would seem to be applicable to the situation here shown to exist.  It is not necessary however to go this far because the whole question was submitted to the jury.  On the question of implied waiver by defendant of the submission of any particular quantum or quality of evidence of insurability it is to be observed that we have not been referred to any provision in the policy requiring a written application, or designating a report from defendant's medical examiner, as an essential prerequisite to reinstatement—the only requirement therein being "evidence of insurability satisfactory to the company."  The proposition of defendant, as expressed in its first point for charge, was that "the insured did not furnish the insurance company with evidence of his insurability satisfactory to the company as the policy sued upon required."  As held in White v. Metropolitan Life Insurance Co., supra, the burden of taking the initiative and proceeding with the production of evidence until the company expressed satisfaction with it, both as to quantum and quality, did not rest upon the insured and his omission so to do would not, as a matter of law, defeat the attempted revival.  The evidence upon this feature of the case was conflicting and different inferences could legitimately be drawn therefrom by a jury.  Mrs. March testified Judson "told my husband he was in good health . . . . . .

told him to take out another policy. He did not ask him if he was in good health; he told him he was in good health." A controversy arose at the trial over the competency, in view of the death of the insured, of defendant's medical examiner to testify to the conversation between the insured and himself at his office on the evening of the day after the check was given. Before objection was made the witness had stated "He was there for an examination" or, as phrased by the trial judge in discussing the objection, "for the purpose of submitting to a re-examination." The matter was not pursued after the objection was made. Under all the evidence on this subject it was a question for the jury whether the insured when he went to the medical examiner's office understood that he had been sent there to be examined for the purpose of determining whether the lapsed policy should be reinstated or whether he thought the examination was for the proposed new policy in the sum of $10,000. The fact that he did not return might indicate that he understood that he was to be examined for the latter purpose and had concluded that he would not take the second policy. However that may have been, it was for defendant to determine what, if any, evidence in addition to that upon which the policy had been issued originally would be satisfactory to it for reinstatement, but it took no action on this matter between the date of the receipt by it of the premiums and the date of the death of the insured. Whether that length of time was a reasonable period within which it should have taken action was a question for the jury. As was stated in Ryan, App., v. Prudential Insurance Co., 33 Pa. Superior Ct. 364, the mere lapse of two weeks in passing upon the question of revival, if the acceptance of the check had been conditional, would not in itself warrant a presumption of acceptance. Here the acceptance of the premiums was unconditional and the

reasonableness of the period of time was to be determined under all the circumstances. We are of opinion that there was evidence from which a jury could legitimately find that the defendant had reinstated the policy. Binding instructions therefore would not have been proper and the assignments of error relating to this branch of the case are overruled.

2. Of the assignments predicated upon alleged errors in the charge and incorrect rulings upon offers of evidence, the 7th, 8th, 9th, 10th and 14th require no further discussion and must be dismissed in view of what we have already said. The 11th and 13th charge that the trial judge erred in excluding the unsigned application for the revival, filled out by Judson, according to his testimony, at the home of the insured and designated as Exhibit No. 5, and also in rejecting a copy of a book of rules entitled, "Rules, Regulations and Instructions for Local Agents and Solicitors." This book was issued by defendant and contained instructions to its representatives concerning the writing and revival of policies, et cetera. There was no evidence that the policy required an application for its revival to be in writing and the book of rules did not purport to govern relations between the company and its policy holders. There was no evidence that the insured had any knowledge of the printed matter appearing on the application or of the contents of the book of rules and there was no error in rejecting these offers: Essington Enamel Co. v. Granite State Fire Insurance Co., App., 45 Pa. Superior Ct. 550, 556. The respective rights of the parties arose out of and must be adjudicated under the terms of the contract as contained in the policy. The 12th assignment relates to the exclusion of a letter written by counsel for plaintiff to Judson under date of October 13, 1923, in which he stated that he understood the company claimed that the policy was not in force. This letter was offered

chiefly for the purpose of contradicting the testimony of Mrs. March to the effect that her first notice that defendant would not pay the policy was on October 25, 1923, but, as stated by the trial judge in his opinion overruling defendant's motions, it was not shown that she had any knowledge either that the letter had been mailed or of its contents and the facts referred to therein might readily have been obtained by her counsel from other sources. We have examined the rulings upon evidence, the answers to points and the entire charge, with care and are of opinion that they are free from reversible error.

All the assignments are overruled and the judgment is affirmed.