## Gross *v.* Home Life Insurance Company of America, Appellant.

Argued December 14, 1933.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Arthur S. Arnold,* and with him *Chidsey, Maxwell & Frack,* for appellant.

*Russell C. Mauch,* and with him *Milton J. Goodman,* for appellee.

Opinion by Stadtfeld, J., February 1, 1934:

The Home Life Insurance Company of America, defendant below and appellant here, on August 24, 1923, issued a policy of life insurance on the life of Antonio Gross for one thousand ($1,000) dollars in which Mary Gross, his wife, was named the beneficiary. The premiums were payable quarterly in the amount of eight dollars and fifty-seven cents ($8.57) per quarter and fell due on the 24th day of February, May, August and November of each year. The premiums were collected by the duly authorized agents of the defendant at the home of assured and plaintiff. Until November 24, 1924, all premiums were paid when and as they fell due. The premium due on November 24, 1924, was not paid and was in default until February 13, 1925, when the defaulted premium was paid and policy was reinstated without any physical examination. The premium due February 24, 1925, was not paid but on May 7, 1925, the policy was again reinstated upon payment of the overdue premium and without any physical examination. The premium due May 24, 1925, was not paid when due and on August 21, 1925, the policy was again reinstated upon payment of the overdue premium and without any physical examination. The premium due August 24, 1925, was not paid when due, but on December 1, 1925, an application for reinstatement was made and the overdue premium paid and the application and premium promptly forwarded by the local agent to the executive office of the defendant company in Philadelphia. The defendant company received the application December 1, 1925 and, after its receipt, had stamped upon it, with a rubber stamp, the following: "Date O. K., Medical Fee, Reinsurance, Loan, Entered, File." After each of these subjects there was entered a check mark, and then stamped upon the application with a rubber stamp were the words, "Approved Dec. 14, 1925." The previous applications for insurance were likewise

stamped but the stamp was put on by a clerk and then initialed by the company doctor, Dr. Cyle, according to the testimony of William Flores, agent of the company. The final application was not initialed.

The assured died December 21, 1925, twenty days after he signed the application for reinstatement. There was no further communication between the defendant company and the insured from December 1, 1925, until the date of assured's death. At the time of the payment of the arrearages, a receipt was given which provided that the "payment is no way binding upon said company except, that said company agrees to return the amount mentioned hereon in case the company declines to revive the said policy."

At the end of the receipt was a note reading as follows: "Note. Unless your policy is revived or your money is returned within six weeks from the date of this receipt, please notify the Company, giving the name of person to whom paid, the amount and date of payment."

The application for reinstatement provided, inter alia, as follows: "I further agree that said policy shall not be reinstated by reason of any money paid or settlement made in payment of, or on account of, said premium until this Certificate shall be duly approved by an Executive Officer at the Executive Offices." The policy provided: "2. Re-Instatement. In case of default in the payment of any premium or interest, the Company will reinstate the policy at any time upon written application by the Insured to the Company at its Executive Offices, with evidence of insurability satisfactory to the Company, payment of all premiums that would have been paid in the intervening time, if no default had been made, with interest thereon at a rate not exceeding six per centum per annum, computed from the premium due date, and payment on reinstatement, with interest at a like rate of any in-

debtedness existing at the time of default, or of any sum paid as a cash surrender value."

The defendant company declined to pay under the policy and, thereupon, suit was brought by Mary Gross, beneficiary, to recover the amount of the same. Appellant defended upon the ground that the policy had lapsed by reason of the non-payment of the premium due August 24, 1925, and had never been reinstated. Plaintiff contended that the company had retained the application and arrearages of premiums from December 1, to December 21, without requesting the insured to submit to a physical examination, and had reinstated the policy by again waiving the requirement of evidence of insurability.

The court submitted the case to the jury on the question whether the company had reasonable time within which to determine whether it would accept the application for reinstatement upon the evidence already in its possession, and it accompanied that submission with the following instructions relative to the effect of the retention of the money: "After the lapse of that reasonable time, if the company retained the money, then it is for you to say whether or not the purpose of the retention of the money was not to express their approval of the policy as it existed, and indicate a determination to revive it."

The learned trial judge refused the request for binding instructions and submitted the case to the jury.

The jury returned a verdict in favor of plaintiff. A motion for judgment non obstante veredicto and motion for new trial were made by the defendant and dismissed by the court en banc in an opinion by STOTZ, J. From the judgment entered on the verdict this appeal was taken.

The assignments of error may be divided into two classes: (1) to the refusal of binding instructions and the overruling of motion for judgment non obstante

veredicto, under which defendant seeks to have judgment entered in its favor, and (2) alleged errors in the charge of the trial judge to the jury.

1. The main proposition in behalf of appellant under the first division of its assignments is that the trial judge erred in refusing binding instructions and in submitting to the jury the question whether the defendant had reinstated the policy and whether it was in force at the time of decedent's death. The question for us in disposing of these assignments is whether binding instructions would have been proper. The material facts are not in dispute. The testimony shows that the defendant company on December 21, 1925, when the insured died, had in its possession sufficient premiums to reinstate the policy; that prior applications had been approved without a physical examination having been requested or made; that no request for such examination was made in the last instance; that the application for reinstatement was held from December 1, 1925 to December 21, 1925, when decedent died without any communications between the company and the insured; the application for reinstatement had on it the rubber stamp impression: "Approved December 14, 1925." Flores, the agent of the company, called by plaintiff, testified that the previous applications for reinstatement were likewise stamped, but the stamp was put on by a clerk and then initialed by the company doctor, Dr. Cyle. The last application was not initialed.

Edgar T. Miller, assistant superintendent of defendant company, testified on cross-examination, when shown Exhibit No. 8, the disputed application, that it indicated as having been approved by the company. He did testify on re-direct examination that in addition to the application for reinstatement, the company sends out another form stating whether or not a policy had been reinstated; that he never received such form

that the application dated December 1, 1925 had been approved, or that the policy had been re-instated.

F. E. Meyrellis, superintendent of defendant company, testified that the policy was never reinstated on the last application, and that neither the president nor secretary of defendant company authorized its reinstatement; he admitted, however, that his testimony was based on written advice he had received in form of letters from the company.

The policy did not, as a prerequisite, require a report from the defendant's medical examiner—the only requirement therein being "evidence of insurability satisfactory to the company;" nor does the application for reinstatement provide in what manner the approval by an executive officer shall be manifested.

The issue, under the testimony, narrowed down to the single question whether the policy had been reinstated prior to the death of the insured. We cannot agree with the contention of appellant that it was the duty of the court to say, as a matter of law, whether or not the delay between the date of the receipt of the application for reinstatement, and the date of death, was reasonable or unreasonable. That was a question of fact to be submitted to the jury under proper instructions. Nor did the duty devolve upon the insured, in the absence of a request from the company, to produce evidence of insurability.

We have an almost analogous case in White v. Metropolitan Life Insurance Company, 22 Pa. Superior Ct. 501. In that case the policy contained a provision that if the policy became void by reason of non-payment of premiums it might be revived "upon payment of all arrears and the presentation of evidence satisfactory to the company of the sound health of the insured." Payments ceased on June 15, 1896, but on November 24, 1896, the insured paid the premiums up to February 10, 1897. The application and

premium of November 24, 1896, were retained by the company until the death of the insured, without requesting any proof as to the soundness of his health. The court held that it was not error for the court to submit to the jury the question whether the company had reasonable time in which to determine what its action would be and whether the retention of the money did not indicate a determination to revive the policy.

This court, speaking through President Judge RICE at page 505, said: "There were but two things required to revive the policy, first, the payment of all arrears; second, the presentation of evidence, satisfactory to the company, of the soundness of health of the insured. Upon fulfillment of these conditions the policy would be revived without further action; it was not essential that the assent of the company to the revival be indorsed on the policy. . . . . . .

"Nor are we prepared to give our assent to a construction of the revival clause which would relieve the company under any and all circumstances from the obligation of indicating to the policy holder the kind of evidence that would be satisfactory. It is clear, however, that mere conditional acceptance of the premiums in arrear under the circumstances stated at the outset of this opinion would not, of itself, revive the policy. The company was entitled to a reasonable time within which to determine whether it would accept the application for revival upon the evidence already in its possession or would demand the production of other evidence, and if so, to determine what its character should be. But where, as was the case here, nothing was said upon the subject at the time of the payment of the money or later, and the money was retained by the company beyond the reasonable time above indicated, and especially if it was sufficient in amount to cover not only past but future dues, the natural and reasonable inference would be that the company was satisfied as to the soundness of the

health of the insured and waived the production by the policy holder of evidence of that fact.

"We cannot say that under such circumstances the attempted revival of the policy would be defeated by the omission of the policy holder to take the initiative and to proceed with the production of evidence until the company expressed satisfaction with it both as to quantum and quality. On the contrary we are of opinion, that the learned trial judge committed no error, of which the defendant can justly complain, in submitting to the jury the question whether the company had reasonable time (nearly five weeks) within which to determine what its action would be, or in accompanying the submission of that question with the following instructions relative to the effect of the company's retention of the money: 'After the lapse of that reasonable time, if the company retained the money, then it is for you to say whether or not the purpose of the retention of the money was not to express their approval of the policy as it existed, and indicate a determination to revive it.' "

In the case at bar the company retained the application and back premiums from December 1 to December 21 (nearly three weeks), without requesting the insured to submit to a physical examination, and the learned trial judge committed no error in submitting to the jury the question whether or not the company had reinstated the policy, by again waiving the requirement of satisfactory health of the insured.

This is especially true in view of the testimony of Edgar T. Miller, the defendant's Assistant Superintendent, who testified that the normal time for acceptance of an application was from two (2) to ten (10) days and that the agents would be informed whether it was approved or not and the time would not exceed ten (10) days.

The case cited was followed by this court in the case

of Malchinsky v. Mutual Life Insurance Company, 90 Pa. Superior Ct. 1, wherein we said through our Brother CUNNINGHAM, on p. 11: "On the question of implied waiver by defendant of the submission of any particular quantum or quality of evidence of insurability, it is to be observed that we have not been referred to any provision in the policy requiring a written application, or designating a report from defendant's medical examiner, as an essential prerequisite to reinstatement—the only requirement therein being 'evidence of insurability satisfactory to the company.' The proposition of defendant, as expressed in its first point for charge, was that 'the insured did not furnish the insurance company with evidence of his insurability satisfactory to the company as the policy sued upon required.' As held in White v. Metropolitan Life Insurance Co., supra, the burden of taking the initiative and proceeding with the production of evidence until the company expressed satisfaction with it, both as to quantum and quality, did not rest upon the insured and his omission so to do would not, as a matter of law, defeat the attempted revival. The evidence upon this feature of the case was conflicting and different inferences could legitimately be drawn therefrom by a jury. ...... It was for defendant to determine what, if any, evidence in addition to that upon which the policy had been issued originally would be satisfactory to it for reinstatement, but it took no action on this matter between the date of the receipt by it of the premiums and the date of the death of the insured. Whether the length of time was a reasonable period within which it should have taken action was a question for the jury. As was stated in Ryan, App. v. Prudential Insurance Co., 33 Pa. Superior Ct. 364, the mere lapse of two weeks in passing upon the question of revival, if the acceptance of the check had been conditional, would not in itself

warrant a presumption of acceptance. Here the acceptance of the premiums was unconditional and the reasonableness of the period of time was to be determined under all the circumstances."

The cases cited by appellant are readily distinguishable from the instant case. In Duffy v. Society, 17 Pa. Superior Ct. 531, at the time the application for reinstatement was made, the insured, who was sick and ailing, deceived the company by falsely stating that he was in good health and, "under the very terms of the By-Laws (of the Society), the contract was dead and could not be vitalized by the payment of the delinquent dues."

In Ryan v. Prudential Insurance Co., supra, the insured was in ill health at the time the application to revive was made, and died before any action was taken by the company.

The decision in Lantz v. Insurance Company, 139 Pa. 546, was based on the fact that the overdue premium was not tendered until after the death of the insured, which was obviously too late.

In the case of McDonald v. Life Insurance Company, 253 Pa. 239, before the insured died the company returned to him not only the check and notes which were given to pay the premium but also wrote a letter stating that reinstatement of the policy had been definitely postponed.

The case of Munhall v. Insurance Company, 300 Pa. 327, was an application for a new policy of insurance, while the instant case was an application for reinstatement of a lapsed policy; the former was an action on an oral contract while the latter was on a written contract. Furthermore, the Act of 1921, P. L. 682, Article III, Section 317, 40 PS 440, prevents a valid oral contract of life insurance in Pennsylvania.

We are of opinion that there was evidence from which a jury could legitimately find that defendant

had reinstated the policy. Binding instructions therefore would not have been proper and the assignments of error relating to this branch of the case are overruled.

2. Of the assignments on alleged errors in the charge, "showing bias against the defendant company," and in charging "that the defendant could not hold the matter in a position that it could keep on collecting premiums and safeguard themselves against payment of the policy," and "in endorsing to the jury the argument of plaintiff's counsel that the company could not play 'fast and loose' with the decedent and his family," the same are predicated on the following portion of the charge of the trial judge: "Now the plaintiff while admitting that that premium was not paid until December 1st says, in the first place, that the company accepted the money, and in the second place, either by positive action of approving the reinstatement application, or by non-action in failing to disapprove it, within thirty-one days, the defendant cannot now come into court and set up this defense; that they are barred or estopped from setting it up, and I say to you that, of course, the defendant cannot hold this matter in such a position that they could keep on collecting premiums on a policy and at the same time hold themselves safe against paying the amount of the policy in the case of the death of the insured and the plaintiff says to you that the company cannot play 'fast and loose' with the decedent and his family. If you find that they did so, of course the contention of the plaintiff would be correct."

We have carefully examined the entire charge and believe it fairly and properly submitted to the jury the matters in issue. The quotations from the charge on which the assignments of error are based are statements of the position taken by plaintiff in relation to defendant's actions, and not the expression of the court's opinion or attitude. After the court had re-

viewed the testimony and the relative contentions of plaintiff and defendant, it repeated what it had previously stated, "I will leave these matters of fact for you to determine, for, as I have said before, you are the sole judges of the facts in the case. Whether or not this policy was reinstated by the defendant company is for you. Whether it was in force at the time of decedent's death is for you and if you find that such was not the case, then, of course, the verdict must be for the defendant." This was a fair statement of the issues on which the jury was to pass. The assignments of error predicated upon alleged errors in the charge are overruled.

Judgment affirmed.