McGine *v.* Industrial Health, Accident and Life Insurance Company, Appellant.

McGine *v.* State Mutual Benefit Society, Appellant.

Argued October 23, 1936.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, James and Rhodes, JJ.

*George J. Edwards, Jr.,* with him *George J. Edwards, III* and *Ralph S. Croskey,* for appellants.

*Abraham T. Needleman,* with him *Samuel J. Needleman,* for appellee.

Opinion by Parker, J., January 29, 1937:

These two cases were tried together and, as they involve precisely the same questions, they will be disposed of in one opinion. The suits were brought by Hattie McGine, widow of Emanuel McGine, in one case against the State Mutual Benefit Society and in the other against the Industrial Health, Accident and Life Insurance Company, to recover the face of industrial life insurance policies. The defense in each case was that the policies were lapsed for non-payment of

premiums and that, even if the policies were reinstated as claimed by the plaintiff, there was no liability upon the part of the insurance carriers since the insured died from a sickness or disease contracted prior to thirty days after the date of an alleged reinstatement. The cases were tried by a judge in the municipal court without a jury and resulted in verdicts for plaintiff in each case for the face of the policy. We are all of the opinion that certain trial errors require a retrial of the case but to avoid, if possible, further appeals we will dispose of certain legal questions now raised.

It will avoid confusion to refer to the facts in the case against the State Mutual Benefit Society although the two cases differ only in the amounts of the policies and the amounts of the premiums payable. The policy in that case provided: "If the weekly dues are due and unpaid for three successive Mondays, this certificate becomes lapsed automatically at the close of business on the third Monday, and can be reinstated only (a) by payment in full of all arrears and (b) the presentation to the Society of satisfactory evidence of the good health of the member, both of which are conditions precedent to reinstatement. Payment of dues after this certificate has so lapsed, without presenting such evidence of good health, will not reinstate this certificate, but will only entitle the member, or the beneficiary, to a return, after demand, of the dues actually paid after the date of such lapse. If this certificate lapse and be reinstated at any time, then the Society shall not be liable for the payment of any money for or on account of the death of the member resulting from any sickness, disease or accident, contracted or occurring prior to the expiration of thirty days after the date of such reinstatement."

The premiums due on March 18 and 25, and April 1 and 8, 1935, were not paid when due and the policy automatically became lapsed. The premiums in ar-

rears were paid on April 11, 1935, and all premiums due thereafter were paid on time until the death of the insured on July 9, 1935. The insurance company, on and after April 11, 1935, sent a collector to the home of the insured each week and that agent received the premiums, gave an unconditional receipt therefor, and forwarded the premiums to the home office. The company retained the premiums and, so far as the record discloses, made no request of the insured for proof or evidence of his good health. We agree with the court below that there was sufficient evidence to support a finding of fact by the trial judge that the company waived its right to demand further "satisfactory evidence of the good health of the member" by the receipt and retention of the premiums for a period of three months and that the policies were reinstated: *White v. Metropolitan Life Ins. Co.*, 22 Pa. Superior Ct. 501; *Gross v. Home Life Ins. Co.*, 112 Pa. Superior Ct. 96, 170 A. 432; *Shay v. Phoenix A. & S. Ben. Assn.*, 28 Pa. Superior Ct. 527; *Malchinsky v. Mutual Life Ins. Co.*, 90 Pa. Superior Ct. 1.

The clause in the policy dealing with reinstatement gives no hint as to the nature of the evidence that might be required by the company to reinstate the policy or the manner in which the approval of the company should be manifested. The insured had no way of knowing what would be satisfactory to the company or what facts they desired to have in order to form a decision. "The burden of taking the initiative and proceeding with the production of evidence until the company expressed satisfaction with it, both as to quantum and quality, did not rest upon the insured and his omissions so to do would not, as a matter of law, defeat the attempted revival": *Malchinsky v. Mutual Life Ins. Co.*, supra (p. 11). An agent or collector, was calling at the home of the insured weekly and for all that the insured knew the company may have

been securing on its own account such evidence as it deemed necessary to determine the health of the insured at that time. There was no evidence of any request by the insurer for evidence of good health. Consequently when the company accepted the premiums weekly for three months and retained them without any suggestion that the receipt of premiums was conditional in any respect, there was sufficient evidence to raise a question of fact as to whether the company had had a reasonable time in which to make its decision. The question of reinstatement was therefore one of fact to be decided by the judge sitting as a jury.

To the alternative defense of the insurance company the court below apparently gave no consideration, for the opinion filed makes no reference to it. The trial judge, over the objection of the plaintiff and subject to exceptions, received certain hospital records which, if properly proved and competent for the purpose, showed that the insured visited the dispensary of the Orthopaedic Hospital on April 26, 1935, and was admitted as a patient to that institution on May 10, 1935; that thereafter he was discharged from that hospital to the Graduate Hospital of the University of Pennsylvania for a probable operation; that after his removal to the Graduate Hospital he was operated on and died on July 9, 1935, as a result of a supra sellar tumor above the pituitary gland. The diagnosis of the Orthopaedic Hospital indicated that the patient was suffering while in that institution from a pituitary tumor. There was nothing in the record to contradict the evidence received, except that his wife and sister-in-law testified that the insured was a well man before going to the hospital.

The earliest date that may be assumed as a time when the policy was reinstated was April 11, 1935, at which time the back premiums were received by the company. The company would have a reasonable time

thereafter to decide whether the policy would be reinstated. The terms of the policy clearly provide that if death resulted from any sickness, disease or accident contracted or occurring prior to the expiration of thirty days after the date of such reinstatement, the company shall not be liable for the payment of any death benefits. This provision is clear and not ambiguous. Consequently, if the disease of which the insured died was contracted or occurred on or prior to the expiration of thirty days after the date of such reinstatement, the insurance company was not liable. The hospital records indicate that some time in April the insured visited the dispensary and was admitted as a patient on May 10, 1935. This evidence being uncontradicted, it is difficult to see how a court could have disregarded such testimony and we presume that this provision in the policy was overlooked when the case was considered.

The difficulty with disposing of the case, however, arises from the fact that the hospital records were improperly received in evidence. One Reba Frank was called as a witness by defendant and was sworn. She had with her certain records resembling hospital records. An offer was called for, was made, and was objected to. The objection was overruled and, without any proof as to how the witness came in possession of the records, or what position, if any, she occupied in the hospital, the records were received in evidence unconditionally. A record purporting to be from the Orthopaedic Hospital was received in the same manner. We know of no rule of evidence holding that alleged records of a hospital, even though a public one, prove themselves. There was not any evidence showing that the records received were the records of any hospital and it was clear error to receive them without proof of their authenticity.

Even if the records had been properly proved they

were not admissible for all purposes and to prove all the facts set forth in those records: *Hufnagle v. Delaware & Hudson Co.*, 227 Pa. 476, 76 A. 205. Also see *Paxos v. Jarka Corp.*, 314 Pa. 148, 171 A. 468. We have not in this state any statute making hospital records admissible in a case of this character.[1] Such records being hearsay evidence are not competent evidence unless on the principle of necessity. Even then such hearsay statements are not receivable unless the person alleged to have made the statement is not available as a witness: 3 Wigmore on Evidence §1521 et seq.; also see §§1707 and 1639.

The records should not have been received for any purpose on the state of the proofs. However, the court did receive them and the defendant relied thereon; consequently, right and justice require us to grant a new trial that the defendant may have the opportunity to submit, if possible, competent proof tending to show that the disease of which the insured died was contracted or occurred prior to the expiration of thirty days after the date of such reinstatement, if the court shall hold that the policies were so reinstated.

The judgments in each of the above cases are reversed with a venire facias de novo.

---

[1] By Act of June 2, 1915, §422, P. L. 736 (77 PS 835), in cases involving workmen's compensation the records kept by a hospital of the medical or surgical treatment given to an employee in such hospital are admissible as evidence of the medical and surgical matters stated therein.