Smith *v.* State Mutual Life Assurance Company
of Worcester, Appellant.

Argued December 10, 1937; reargued January 26, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Robert Dechert,* with him *Joseph S. Clark, Jr.,* of *Dechert, Smith & Clark,* and *Irving T. F. Ring,* for appellant.

*Morris Wolf,* with him *Oscar B. Friedman,* for appellee.

OPINION BY MR. JUSTICE BARNES, May 16, 1938:

Our review of the record convinces us that there is a single question involved in the present appeal. That question is whether the policy upon which this suit was brought was reinstated by the defendant insurance company after it had lapsed for the nonpayment of the premium due on May 15, 1933. The material facts of the case are not in dispute. The proper conclusions to be drawn from the admitted facts alone give rise to this controversy.

Plaintiff is the beneficiary named in a policy of insurance for $5,000 issued on August 15, 1924, by the defendant company upon the life of her husband, Harry F. Smith. It provided for the payment of an annual premium, which was subsequently changed to require quarterly payments of premium due on the fifteenth

days of February, May, August and November in each year.

The insured regularly paid the premiums upon the policy until February 15, 1933, when he failed to pay the quarterly premium then due. This premium was not paid until May 8, 1933, when a receipt was issued to the insured continuing the policy in force for three months from February 15, 1933. It does not clearly appear from the evidence whether the company had granted an extension of time for the payment of this premium, or whether the policy had lapsed and was reinstated according to its terms.

The next premium, due on May 15, 1933, in the sum of $55.55 was not paid before the expiration of the grace period of thirty-one days allowed under the contract, and in consequence the policy automatically lapsed on June 15, 1933. Several weeks thereafter, on July 12, 1933, the insured applied for its reinstatement at the principal office of the company in Philadelphia. There he signed an application for reinstatement,[1] and gave to the cashier his check to the order of the insurance company for $55.55, the correct amount of the over-due premium. This check was deposited and paid by the bank

---

[1] The material portion of the application for reinstatement reads as follows:

"I hereby make application for reinstatement of the above numbered policy which lapsed for nonpayment of the premium indicated; and for the purpose of inducing the Company to reinstate said policy, I do hereby declare that I am now in sound health and that during the past twelve months I have had no disease, injury, or impairment of health whatsoever, neither have I consulted nor been treated by any physician, surgeon, or practitioner; and that I have made no application for life insurance to any Company or Society which was rejected, postponed or modified in kind, amount, or rate. I further agree that the truth of the foregoing statements shall be the basis of reinstatement of said policy, and the acceptance by the Company of the premium now in default shall not be taken as a precedent for future similar action.

"(Signed) HARRY F. SMITH."

to the defendant company on July 13, 1933. It was the failure to pay this premium within the period specified by the policy that has resulted in the present litigation.

On July 13, 1933, the general agent of the defendant in Philadelphia, sent a notice of the payment of this premium by the insured to the home office at Worcester, Massachusetts, and at the same time forwarded a "receipt" to the insured, which bears the official signature of the secretary of the company, and the countersignature of its cashier. On the face of the receipt are these words: "Received the Quarterly Premium continuing the policy in force for three months from date noted below." The date so noted is May 15, 1933. The receipt also contains detailed information respecting the number of the policy, the name of the insured and the amount of the premium. At the bottom thereof a reference is made to a notice on the reverse of the receipt, which informs the policyholder that "by virtue of this policy he is a member of the State Mutual Life Assurance Company of Worcester, and is entitled to vote, either in person or by proxy at any and all meetings of said company." Shortly after July 13, 1933, the insured received from the defendant company a premium notice calling for the payment of the next quarterly premium due upon August 15, 1933.

Thereafter, either on August 1st, or on August 14, 1933 (the evidence is conflicting as to which date is the correct one), the defendant company notified the insured that his application for the reinstatement of the policy had been rejected, and it attempted to refund the premium paid on July 12, 1933. The return of this premium was refused by the insured who subsequently, on September 9, 1933, within the grace period, tendered payment of the next quarterly premium due by forwarding to the defendant a check for the amount set forth in the notice received from the company. The defendant refused to accept the check upon the ground that there had been no reinstatement of the policy and it had be-

come void. In returning the check it indicated that it would not be necessary thereafter to send checks in tender of the premiums.

· The insured died on April 13, 1935. All necessary proofs of death were furnished to the company, which refused to pay the policy. Plaintiff thereupon instituted this action to recover the face amount thereof, but it was not denied by her that the outstanding loans against the policy would reduce it to the sum of $4,320.80. There was no question raised by defendant respecting the formal proofs of death which had been filed with it.

The court below submitted the case to the jury which returned a verdict in favor of plaintiff for $4,320.80, as due upon the policy. Defendant's motion for judgment non obstante veredicto and its rule for a new trial were refused, and from the judgment accordingly entered the defendant has taken this appeal.

The provision in the present contract which confers upon the policyholder the privilege of reinstatement after default in premium payment imposes two requirements as conditions precedent to such right:[2] (1) the payment of all over-due premiums or other charges against the policy with simple interest thereon; (2) the production of evidence satisfactory to the company of the insurability of the applicant. As it was said in *White v. Metropolitan Life Insurance Co.*, 22 Pa. Superior Ct. 501, 505, "There were but two things required to revive the policy, first, the payment of all arrears; second, the presentation of evidence, satisfactory to the

---

[2] The reinstatement clause provides:

"This policy may be reinstated at any time after default in premium payment, provided it has not been surrendered for its cash value, or its extension period expired, upon the production of evidence, satisfactory to the Company, of the insurability of the person whose life was insured and the payment of all over-due premiums and the payment or reinstatement of any other indebtedness to the Company under this policy with simple interest at the rate of six per centum per annum."

company, of the soundness of health of the insured." In the present case the obligation of the insured to pay the premium in arrears was discharged, and there remained to be performed the duty on his part to furnish the company with satisfactory evidence of his insurability.

The applicant for reinstatement must furnish such evidence as the company may reasonably and in good faith require to satisfy it that he is an insurable risk. No other construction of the clause here in question is possible. At the same time it imposes, as effectively as if stated in precise language, a related duty upon the company to indicate the character of evidence which it will regard as meeting the test of satisfactory insurability. It is not the part of the applicant to initiate the production of evidence that he is a favorable risk, until the company first makes known to him what evidence is necessary upon that question. Otherwise he would have no knowledge whether the company concluded that already it possessed evidence of health to justify a revival of the policy, or would require a medical examination, or other proof of insurable qualification. Until such information is received from the company, and not before, does it become the obligation of the policyholder to produce such evidence.

Such is the common-sense meaning which has been given to like reinstatement clauses in other policies which have been before our courts for interpretation. In *Malchinsky v. Mutual Life Ins. Co.*, 90 Pa. Superior Ct. 1, it is said (p. 12) : ". . . it was for defendant to determine what, if any, evidence in addition to that upon which the policy had been issued originally would be satisfactory to it for reinstatement, . . ." And in *Gross v. Home Life Ins. Co.*, 112 Pa. Superior Ct. 96, the Court held (p. 102) : "Nor did the duty devolve upon the insured, in the absence of a request from the company, to produce evidence of insurability." In *White v. Metropolitan Life Ins. Co.*, supra, the same

principle was clearly stated as follows: (p. 505) "Nor are we prepared to give our assent to a construction of the revival clause which would relieve the company under any and all circumstances from the obligation of indicating to the policyholder the kind of evidence that would be satisfactory. . . . The company was entitled to a reasonable time within which to determine whether it would accept the application for revival upon the evidence already in its possession or would demand the production of other evidence, and if so, to determine what its character should be. But where, as was the case here, nothing was said upon the subject at the time of the payment of the money or later, and the money was retained by the company beyond the reasonable time above indicated, . . . the natural and reasonable inference would be that the company was satisfied as to the soundness of the health of the insured and waived the production by the policyholder of evidence of that fact." See also *McGine v. Industrial Ins. Co.,* 124 Pa. Superior Ct. 602.

This brings us to the consideration of two vital questions of fact: (1) Did the insurance company permit a reasonable time to elapse without calling for evidence of insurability so that it is deemed to have waived the production of evidence of that fact? As we have seen, the premium payment was accepted by the company and retained from July 13, 1933, until August 14, 1933. No request was made for evidence of the health of insured at any time, nor was notice given of the rejection of the application for reinstatement until August 1st, or August 14, 1933, whichever date the jury believed to be the correct one, when refund of the premium and rejection of the application were first attempted by defendant. (2) Did the insurance company make an unconditional reinstatement of the policy? It issued to insured its premium receipt which unequivocally set forth that the policy was continued in force for three months from May 15, 1933. This receipt stated on its face that it was

valid when countersigned by its cashier, and it was so countersigned. It notified the insured that he was a member of the company and was entitled to vote at its shareholders' meetings. Shortly thereafter it gave to insured the usual warning notice in writing of the date and amount of the next quarterly premium payment.

As we review the evidence of the case it seems clear that these questions of fact were to be determined by a jury. In *McGine v. Industrial Ins. Co.,* supra, where the questions involved were similar to those of the present case, the Superior Court said (p. 606) : "The question of reinstatement was therefore one of fact to be decided by the judge sitting as a jury." The recent case of *Lang v. Bowen,* 125 Pa. Superior Ct. 226, held that the evidence of the case was sufficient to sustain a finding that the insurance company had waived the production of evidence of insurability, and the policy was reinstated. The court said, (p. 234) : "The whole question of waiver is usually one of fact for a jury to determine under proper instructions."

To submit to the jury the questions of waiver and reinstatement is the most that this defendant is entitled to in view of the almost persuasive fact that it executed and delivered a contract for the continuance of the policy, and it is now seeking to give a meaning to the instrument which is inconsistent with the terms expressed upon its face. If defendant had intended that the acceptance of the over-due premium and the delivery of the receipt were conditional only, it did nothing to avoid the implication that it was an absolute reinstatement of the policy.

The defendant further complains that the trial judge granted plaintiff's motion to strike out the testimony of three witnesses called on its behalf, who stated in effect that the insured had been examined and rejected for insurance by three named insurance companies because of physical disability. These rejections occurred within twelve months of his application to defendant for the

reinstatement of the policy. This evidence, if admitted, according to defendant, would have established the fact that the statements made in the application for the reinstatement were knowingly false. Defendant asserts that the exclusion of this evidence deprived it of the defense of fraud in this suit upon the policy.

Since the present policy is incontestable, except for the nonpayment of premium "after it has been in force during the lifetime of the insured for one full year from the date of its issue," and that period had expired, the defense of fraud was not available to the defendant company. Under the decisions of this Court and the provision of the policy, the insurance company had the full period of one year from the date of the reinstatement of the policy within which to investigate the condition of health of the insured, and to ascertain whether there had been fraudulent misrepresentation in procuring the revival of the policy: *Smith v. State Mutual Life Assurance Co.*, 321 Pa. 17; *Kanatas v. Home Life Ins. Co.*, 325 Pa. 93. In case of fraud a remedy was available to the defendant company for the cancellation of this policy within the period of its contestability. This remedy should have been pursued by the company unless it meant to waive it. See *Prudential Ins. Co. v. Ptohides*, 122 Pa. Superior Ct. 469, and *American Life Insurance Company v. Stewart*, 300 U. S. 203 (1937). For these reasons we find no error in the action of the court below in striking this testimony from the record. It would have been reversible error on the part of the trial judge if he had permitted it to remain in evidence.

It is unnecessary to discuss the remaining assignments of error, for we have reached the conclusion after a study of the record that the issues here involved were for the jury to decide, and there are no errors disclosed which would justify a reversal of the judgment entered in the court below.

The judgment is affirmed.

Mr. Justice SCHAFFER and Mr. Justice DREW dissent.