Pyrich *v.* Scranton Life Insurance Co., Appellant.

Argued April 19, 1928.

Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.

*Walter E. Glass,* and with him *W. J. Fitzgerald,* for appellant, cited: Brown v. Penna. Casualty Company, 207 Pa. 609; Sydnor v. Metropolitan Life Insurance Company, 26 Pa. Superior Ct. 521; Murphy v. Prudential Insurance Company, 30 Pa. Superior Ct. 560.

*Leroy J. Scanlan,* and with him *Edward J. Harkins,* cited: Arthurholt v. Fire Insurance Company, 159 Pa. 1; Bush v. Hartford Fire Insurance Co., 222 Pa. 419; Susquehanna Mutual Fire Insurance Company v. Elkins, 124 Pa. 484; Singer Mfg. Co. v. Christian, 211 Pa. 534; Malchinsky v. Mutual Life Insurance Company of New York, 90 Pa. Superior Ct. 1.

OPINION BY CUNNINGHAM, J., July 12, 1928:

Plaintiff, the beneficiary in a life insurance policy written by defendant under date of October 19, 1921, in the sum of $2,000, upon the life of Henry Hnylueh, who died August 4, 1923, has a verdict for $1,994.40, with interest, as the proceeds of said policy, less $10.68 credited by plaintiff as the unpaid balance of the annual premium for the current year. Defendant's motions for a new trial and for judgment n. o. v. were overruled by the court below, in banc, and we now have its appeal from the judgment entered upon the verdict.

By the second and third assignments of error it is charged that the learned trial judge erred in refusing defendant's point for binding instructions and in overruling its motion for judgment notwithstanding the verdict. These assignments raise the controlling question involved on this appeal. The defendant contended that it was not liable because the policy, under its terms, had lapsed on November 20, 1922, by reason of the non-payment of premiums, and had not been reinstated. Plaintiff contended that the policy was in force at the date of the death of the insured (August 4, 1923), because there had been paid by him, or on his behalf, to the agents of defendant in the city of Johnstown during the year beginning October 19, 1922, the sum of $90 on account of total premiums for that year, aggregating $105.68, which payments—together with a payment of $5 in excess of the premiums due for the first year—left a balance of $10.68 (credited on her claim) as the amount of premiums unpaid for the

year beginning October 19, 1922, and that by these payments the policy was continued in force at least until September 8, 1923. Delivery of the policy by its agents and the receipt by it of all premiums due for the first year, ending October 19, 1922, was admitted by defendant, but it denied that it received any payments on account of premiums for the ensuing year and contended that plaintiff had not introduced any evidence from which a waiver by it of the provisions of the policy relative to the effect of the non-payment of premiums when due, or within the period of grace provided for, or of the provision that no agent may "waive any forfeiture," could legally be inferred. As plaintiff's pleadings and testimony showed that no payment on account of premiums for the year in question was made to defendant's agent until November 22, 1922, (which was beyond the period of grace), we are required to consider whether there was any evidence on behalf of plaintiff justifying the trial judge's refusal of defendant's request for binding instructions.

The application for the policy was made on October 17, 1921, and it was averred in the third paragraph of plaintiff's statement that on that date defendant had in the city of Johnstown "agents, who were duly authorized by defendant to solicit policies or contracts of insurance; to deliver to purchasers policies or contracts of insurance; to receive payment of premiums on such policies or contracts of insurance; and to receipt for same," and the names of the alleged agents were set out in the fourth paragraph of the statement. At the trial it was admitted by counsel for defendant that "the agents of the defendant company in the city of Johnstown were known as the Keystone General Insurance Agency, composed of Julius Fisher and Moses B. Silverstone, and that Martin A. Haluska was an employe of the said Fisher and Silverstone, acting under them," and that these agents "were authorized to solicit policies of insurance, collect the first annual

premium thereon, and ...... that they had the authority to deliver contracts of insurance and the authority to receipt for the first annual premium.'' The insurance contract was called an ''Endowment Bond'' and provided for ''the payment in advance of One Hundred One Dollars Sixty Cents for one year's insurance from the date [thereof].'' It was further stipulated that the bond would be renewed ''at the end of the first year as an insurance for the whole period of life from that date, subject to the payment in advance of One Hundred One Dollars Sixty Cents on the 19th day of October, 1922, and the payment of a like amount thereafter on every anniversary of this bond until twenty full years' premiums, including the first, shall have been paid hereon to the company, or until the prior death of the purchaser.'' On the back of the policy there was an endorsement to the effect that the premium might be paid ''in semi-annual instalments of Fifty-two and 84/100 dollars each, due on the 19th day of October and April in each and every year during the premium paying period of this contract.'' The contract contained the following provisions with respect to the payment of premiums and the effect of non-payment: ''All premiums are payable in advance at the home office of the company, but will be accepted if paid to an agent authorized to receive the same in exchange for a receipt signed by the treasurer or secretary, and countersigned by such agent. ...... If any premium or instalment thereof be not paid before the end of the period of grace, then this bond shall immediately cease and become void, and all premiums previously paid shall be forfeited to the company, except as provided in this bond. In the event of death, any unpaid portion of the premium for the then current contract-year shall be considered an indebtedness to the company against this bond.'' Manifestly, the last paragraph means death while the policy is in force by reason of the payment of the first, and be-

fore payment of the second, semi-annual premium in any year.

The period of grace was fixed in the following paragraph in the contract: "In the payment of any premium under this policy, except the first, a grace of one month (but not less than thirty days) will be allowed, during which time the policy will remain in force; but any such overdue premium shall be considered in default. If death occurs within the grace period the unpaid premium for the then current policy year shall be deducted from the amount of insurance payable." It is to be noted that if the premium remained unpaid at the expiration of the period of grace the policy would lapse by its own terms without any affirmative act of forfeiture on the part of defendant: Lantz v. Vermont Life Ins. Co., 139 Pa. 546; McDonald v. Columbian Nat. Life Ins. Co., 253 Pa. 239; Cooper v. Belt Automobile Indemnity Assn., 79 Pa. Superior Ct. 479. As the death did not occur during the period of grace and as the defendant admitted that the semi-annual premiums due October 19, 1921, and April 19, 1922, were received by it, we may confine our consideration to the evidence relative to payments on account of premiums for the year beginning October 19, 1922. Under the contract $52.84 was due and payable on that date and a like sum on April 19, 1923. Resolving all conflicts in the evidence in favor of the plaintiff and giving her the benefit of every inference reasonably deducible therefrom, we may treat these facts as established. No payment was made on account of the semi-annual payment due October 19, 1922, until November 22, 1922, on which date $30 was paid to defendant's agents at Johnstown by an uncle of the insured, who received from the agents what may be described as an informal memorandum, on a printed form, stating that the premium due on October 19, 1922, was $52.84 and containing on the back thereof the endorsement "Paid $30. Countersigned: F." This initial was placed on the

paper by a stenographer named Fuller who had authority to sign for Fisher, the agent. The memorandum also contained the following notice: "This receipt is not binding unless countersigned by the manager of this company or by an agent duly authorized to receive the within described premium." It was not signed "by the treasurer or secretary [of the company]" as provided for in the contract.

The next semi-annual payment of $52.84 became due and payable April 19, 1923, but no further payment was made on account of premiums until April 23, 1923, when $60 was paid by plaintiff's husband in behalf of the insured to the agents of defendant at Johnstown and a memorandum upon the same form as that above described was given by them, which contained the endorsement: "Paid on account $60. Balance due $68.52. Countersigned: F." Neither of these informal receipts was dated, and neither of these payments is included in the admission of defendant's counsel relative to payments made by the insured, himself. There was evidence on behalf of defendant that under date of January 16, 1923, the insured signed a written statement with respect to his then condition of health "for the purpose and as the basis of reinstating" the policy, and that defendant declined to consider this application because the insured's occupation had become more hazardous and defendant had information that he was then suffering from tuberculosis. On the part of plaintiff the authenticity of this paper was denied, and, in view of the verdict, we disregard this paper and the reasons assigned by defendant for declining to give it favorable consideration.

We have then the case of a policy, which, under its provisions, lapsed on November 20, 1922, by reason of non-payment of premiums and proof of two payments on account of premiums for the then current contract year made, subsequent to that date but prior to the death of the insured, to the agents of defendant.

There is, however, no evidence tracing these payments into the hands of the defendant company. Could a jury properly be permitted to find from the evidence we have summarized that defendant had waived the provision in the policy that its obligation would "cease and become void" if any premium or instalment thereof was not paid before the end of the period of grace? Clearly not, unless the acts of defendant's agents at Johnstown in accepting the payments we have referred to after the policy had lapsed were binding upon it and were sufficient evidence of a waiver by it to go to the jury. "The underlying element which opens the question of implied waiver to the jury is that the insurer has done some act or pursued some course of conduct which tended to mislead the insured": Brown v. Penna. Casualty Co., 207 Pa. 609, 611. We have held that acceptance and retention by the insurer of a past due premium is sufficient evidence of a waiver to take the case to the jury: Malchinsky v. Mutual Life Ins. Co., 90 Pa. Superior Ct. 1. The difference between that case and the one now before us lies in the fact that here the plaintiff has not traced the payments into the hands of the defendant. Plaintiff contends that payment to the agent was payment to the principal and that the acts of the agent in accepting the money were binding on the defendant. The answer to this is to be found in the policy, which provides that "No agent is authorized to make, alter or discharge this contract, waive any forfeiture thereof, make any contract binding on the company, accept any note in payment of any premium, extend the time for paying the same, nor to assume its payment." It is true that a clause providing that an agent may not waive any provision of the policy may itself be waived (Knickerbocker Life Ins. Co. v. Norton, 96 U. S. 234), but there must be some evidence of acts or declarations of the company,

or of its general officers, indicating such a waiver: Murphy v. Prudential Ins. Co., 30 Pa. Superior Ct. 560, 566. There is not a particle of evidence indicating in any way that the company had waived, or intended to waive, either the limitation upon the authority of its agents contained in the policy, or the provisions written therein with respect to the effect of a failure to pay premiums within the period of grace. It follows that defendant's point for binding instructions should have been affirmed.

The judgment is reversed and is here entered for defendant.