Mitchell *v.* The Alta Life Insurance Company,
Appellant.

Argued November 19, 1934.

Before Trexler, P. J., Keller, Cunningham,
Baldrige, Stadtfeld, Parker and James, JJ.

*Walter B. Gibbons,* with him *Charles A. Lewis* and
*Charles P. Lewis,* for appellant.

*Francis Taptich,* for appellee.

Opinion by Baldrige, J., February 1, 1935:
In this action of assumpsit the plaintiff has judgment.

The question before us is whether a lapsed life insurance policy was revived.

On June 5, 1933, Louise Mitchell took out a $500 life insurance policy with Alta Life Insurance Company, making her husband, Crawford Mitchell, beneficiary. The policy granted a four-weeks' grace period. Article 6 provided for the revival of the policy upon compliance with certain conditions, and reads as follows: "If this policy lapse for the non-payment of premium it may be revived, if not more than 12 months' premiums are due, upon payment of all premiums in arrears, provided evidence of the insurability of the insured satisfactory to the company be furnished, but such revival shall not take effect unless at the date thereof the insured is living and in sound health."

It will be noted that to renew a lapsed policy, the company required (a) payment of all premiums in arrears; (b) satisfactory evidence to be furnished it of the insurability of the insured; (c) that the insured was living and in sound health.

Was the burden of proof on the plaintiff or defendant to show that these terms of the policy had been complied with?

We have not found a case of our appellate courts, and none has been cited, that squarely answers this question, but it has been decided in other jurisdictions.

The case of Equitable Assur. Soc. v. Pettid (Arizona), 11 Pac. (2d) 833, 838, is in point. There the court said:

"But the mere payment of the premium was not of itself sufficient to reinstate the policy. It was also necessary that the insured produce evidence of the insurability satisfactory to the defendant. There is no evidence whatever that the insured ever complied with this provision, and, since the burden was upon him to do so, we must presume as a matter of law, that he did not.

"If nothing further appears, it necessarily follows that the policy was never reinstated."

In the case of Gould v. Equitable Life Assur. Soc. of the U. S., 231 N. Y. 208, 131 N. E. 892, the insurance policy required, for reinstatement, that premiums be fully paid and evidence of insurability satisfactory to the society be furnished. Insured paid his overdue premium some eight months afterwards, and died two months later. The company demanded a certificate of health, which was never furnished. The court reversed the appellate division, and entered judgment for the defendant. Judge CRANE, speaking for the court, said (131 N. E. 894) :

"It must be conceded that this (the sending of the full premiums due) did not in and of itself restore the lapsed policy. The agreement for reinstatement, as quoted above, was to the effect that in case of lapse in consequence of non-payment of premium when due, the policy might be reinstated upon production of evidence of insurability satisfactory to the society and the payment of the overdue premium. Two things were required, or, to be exact, could be insisted upon, by the company before restoring the policy. One was the production of a health certificate and the other the payment of the premium. Gould complied with one of these requisites by paying the premium whereupon the company notified him that before the policy would be restored it would insist upon the other requirement— the health certificate . . . . . . He never complied with this second requisite."

We think the conclusion reached in those two cases is correct. We, therefore, hold that the burden of proving a revival of the policy was on the plaintiff.

The next question is, Did the plaintiff sustain the burden?

Of course, if a prima facie case was made out by showing that the policy had been revived, then, as the plaintiff contends, the burden to establish fraud un-

doubtedly would have been on the defendant: Brelish, Adm. v. Prud. Ins. Co., 109 Pa. Superior Ct. 1, 165 A. 516; Dzsujko v. Eureka-Md. Assn. Corp., 109 Pa. Superior Ct. 9, 165 A. 518; Jones v. Metro. Life Ins. Co., 109 Pa. Superior Ct. 506, 167 A. 485. The plaintiff's case consisted of certain admissions in the pleadings, which have no particular bearing on the question before us, the offering in evidence of the policy and premium receipt book, and his own testimony that his wife entered the West Penn Hospital on August 28, 1933, and died on October 27, 1933. The receipt book showed that the policy lapsed on August 28, 1933, as five premiums were due on that date; on August 31, 1933, four premiums were paid; and on September 4, 1933, the premiums were paid to date. The plaintiff's difficulty is that his evidence fails to show that the policy was renewed after it had lapsed by proving that evidence of the insurability of the deceased had been furnished to the company and that she was then in sound health. He, therefore, did not make out a prima facie case.

Furthermore, the proof of death offered in evidence, signed by Crawford Mitchell, beneficiary, showed that the insured had entered the hospital August 28, 1933, and remained there until her death almost two months later. The answer to the question as to the duration of her illness was "about two months." Dr. Banfield, the attending physician, certified therein that the insured's health first began to be affected "two months prior to her demise," and that she died of "acute vegetative endocarditis."

Disposing of this case on somewhat technical questions does not, in our judgment, result in a substantial injustice to the plaintiff, as the evidence conclusively shows that the deceased was not in sound health, but a victim of a serious heart complaint, at the time of the alleged renewal of the policy.

Dr. Van Horne, called by defendant, testified that

he had treated the insured intermittently for 18 years; the last time was 10 days prior to August 28, 1933, for an attack of influenza, and that he recommended that she go to the hospital as she had developed a heart condition, which he diagnosed as endocarditis.

Dr. Winstead testified that he treated the insured for endocarditis from July 1st to July 12, 1933.

Dr. Evans, associated with the West Penn Hospital, stated that the deceased had endocarditis on September 2d, and that more than likely she had it three months rather than three weeks prior thereto, although he did not attempt to state definitely the time of its origin.

The plaintiff did not endeavor to contradict this testimony, other than to allege that the insured had been pregnant close to five months; but it does not appear that this condition was the reason for her entering the hospital; it was due rather to her having influenza and a heart condition.

Nor do we think that the defendant waived its right to a compliance with the conditions precedent to the revival of the policy by accepting payment of the premium in September. It was contended in Gould v. Equitable Life Assur. Soc. of the U. S., supra, (131 N. E. 892, 894) that the society waived the provisions of the policy by keeping a premium subsequently paid. It was there said: "This was the most natural thing to do and not in any way inconsistent with its demand for the health certificate . . . . . . The keeping of the money was in anticipation of its receipt."

The plaintiff having failed to assume the burden of showing that the policy was revived, as required by the terms of the policy, it was the duty of the learned court below to hold that he could not recover.

Judgment is reversed, and now entered for defendant.