Riebel, Appellant, *v.* Prudential Insurance Company of America.

Argued May 28, 1935.   Before SIMPSON, KEPHART, SCHAFFER, DREW and LINN, JJ.

*Herman B. Shepard,* with him *Peter P. Jurchak,* for appellant.

*A. Floyd Vosburg,* with him *A. A. Vosburg* and *Richard B. Sheridan,* for appellee, were not heard.

PER CURIAM, June 29, 1935:

On October 11, 1930, Joseph Riebel insured his life in the defendant company, naming his wife, the plaintiff herein and appellant on this appeal, as the beneficiary. The policy provided that "If any premium be not paid when due, as specified herein, this policy shall be void and all premiums forfeited to the Company, except as herein provided."   The annual premium which fell due October 11, 1931, and which was payable within 31 days thereafter, was not paid or tendered within that period, and by reason thereof the policy, according to its terms, became void.

The policy also provided that "If this policy be lapsed for nonpayment of premium it will be reinstated at any time after the date of lapse upon written application and payment of arrears of premium with interest at the rate of five per centum per annum, together with the reinstatement of all indebtedness, provided such indebtedness be not greater than the loan value of this policy at the time of the application for such reinstatement, and *provided evidence of the insurability of the insured satisfactory to the Company be furnished.*"

On May 31, 1932, the insured applied for reinstatement of the policy under the provision last quoted; in his application therefor stating: *"I agree that the above policy shall not be in force until the Company has formally approved this application and delivered the Company's official premium receipt covering the arrears. I further agree to accept a return of said arrears should the Company decline to approve this application."* On June 2, 1932, the insured paid defendant's agent the arrearages of premiums and received from the former a receipt which specified that "This receipt is issued 'upon the express understanding that if the Company declines to approve such application the above amount, less medical fees, if any, will be refunded, in exchange for this receipt, *and that in no case shall this receipt be construed as renewing or creating any liability on behalf of the Company under the above policy.'* "

On the same day, a doctor's report, as to the insured's physical condition, was delivered to defendant. This report contained the following: "Is [the insured's] appearance healthy? A. Fair. Q. Give rate of pulse per minute? A. 80. Q. Weight. A. 106 pounds. Q. Did you find applicant free from physical and mental defect and in good health? A. Yes. Remarks: Had Grippe starting March 15th, 1932, and hasn't felt very well since. Gradually improving. Looks anemic. Loss of weight 20 pounds. Above in actual weight." No other report was

ever made as to the insured's state of health. The next day he died. On June 6, 1932, the company, because of the unsatisfactory report as to the insured's health, and without knowledge that he had died, refused the application for reinstatement, and tendered back the arrears of premium which had been paid in connection therewith, and later kept up that tender down to and including the time of the trial; but it was refused by the tenderee in every instance.

Without doing anything further, except to furnish proofs of the death of the insured, plaintiff, nearly seven months later, brought the present suit on the policy. In her statement of claim nothing is said regarding the lapse or the attempt to have the policy reinstated, but therein she planted her alleged right to recover, solely on the claim that both she and the insured had "always, from the time of making of the policy of insurance, performed all things on her [and his] part to be fulfilled according to the tenor and effect of that instrument." Admittedly that averment was untrue, and, since no other basis of recovery was alleged, perhaps this fact alone would debar recovery; but as neither litigant rested the claim or defense thereon, but, at the trial, fought over the question of defendant's alleged duty to reinstate the policy, we will consider that question also.

After the evidence at the trial was concluded, the trial judge, on motion, entered a compulsory nonsuit, which the court in banc refused to set aside, whereupon plaintiff appealed. The decision below is so clearly right that but little can be said on the subject. Admittedly, the policy properly lapsed for nonpayment of the premium, and the burden of proof of the necessary facts compelling reinstatement was on the plaintiff. Admittedly also it was not in fact reinstated, and the ultimate question is, therefore, was defendant legally required, under the facts above set forth, without more, to approve the application for reinstatement. We agree with the court below that it was not.

The policy provided that there should be no reinstatement unless "evidence of the insurability of the insured satisfactory to the Company be furnished." This is the exact statutory requirement for reinstatement: Section 410 (k) of the Insurance Company Law of May 17, 1921, P. L. 682, 723. No such satisfactory evidence was ever furnished to defendant. Nor is there anything on this record upon which to base a claim that defendant should have been satisfied as "to the insurability of the insured," from the papers furnished it at the time reinstatement was sought. Proof that a man who had "had Grippe [for nearly three months] and hasn't felt very well since. Gradually improving. Looks anemic. Loss of weight 20 pounds," is conclusive "evidence of the insurability of the insured," cannot possibly be accepted, even though the doctor who thus stated his condition adds also his opinion that the insured is "free from physical and mental defect and is in good health." The two statements contradict each other, so far as uncontradicted evidence of "insurability" is concerned, and, in the absence of other and further proof on the subject, can avail nothing. It follows, that even if the court could overlook the contractual and statutory requirement, that "the evidence of the insurability of the insured [must be] satisfactory to the Company," which, of course, it cannot do, plaintiff has furnished no evidence which would justify either the court or jury in so determining on the unsatisfactory proof appearing in this record.

The judgment of the court below is affirmed.