Fishman *v*. Eureka-Maryland Assurance
Corporation, Appellant.

Argued December 12, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Kendall H. Shoyer,* with him *Frederick J. Shoyer,* for appellant.

*A. Jere Creskoff,* with him *Louis Sherr,* and *Michael Edelman,* for appellee.

OPINION BY KELLER, P. J., January 31, 1936:

This case involves the question whether the life insurance policy in suit, which had lapsed for non-payment of premiums, had been reinstated prior to the assured's death. The court below submitted the case to the jury, which rendered a verdict for the plaintiff. Defendant's motion for judgment non obstante veredicto was refused and judgment was entered on the verdict. It must be reversed.

The clause in the policy relating to the reinstatement of lapsed policies is in substantial accord with the re-

quirements of our statute law then in force on the subject,[1] and reads as follows: "REINSTATEMENT. This Policy may be reinstated at any time after default in the payment of any premium, if not previously surrendered, upon evidence satisfactory to the Corporation of the insurability of the Assured, and upon payment of all overdue premiums with interest thereon at the rate of six per centum per annum, and all indebtedness to the Corporation existing against this Policy at date of default, with interest at the same rate, ......"

The facts are not in dispute. Accepting them as presented, in the light most favorable to plaintiff, as we are required to do, they may be summarized as follows: On May 20, 1931 the defendant issued to Louis Fishman, plaintiff's husband, a policy of life insurance in the amount of $2,000, the assured to pay a quarterly premium of $20.20, on the 20th day of May, August, November and February of each and every year during his life. The premium payable August 20, 1932 was not paid when due nor within the thirty-one day grace period allowed by the policy, and as this default occurred within three years of issuance of the policy, there was, under its terms, no paid-up or extended insurance value and the policy lapsed for non-payment of the premium. No steps to reinstate the policy were taken by November 20, 1932, and the quarterly premium due on that date

---

[1] "No policy of life or endowment insurance......shall be issued ......by any......life insurance company in this Commonwealth unless it contains, in substance, the following provisions:—

......(k) A provision that the holder of a policy shall be entitled to have the policy reinstated, at any time within three years from the date of default in premium payments,......upon the production of evidence of insurability satisfactory to the company, and the payment of all overdue premiums and any other indebtedness to the company upon said policy, with interest at the rate of not exceeding six per centum per annum." Act of May 17, 1921, P. L. 682, sec. 410, pp. 720 and 723. Amended now by Act of July 17, 1935, P. L. 1116. See section 410 B (g).

was also not paid. The assured on or about January 31, 1933 made oral inquiry of Franklin, the Company's local agent, as to what would have to be done to reinstate the policy. The latter consulted Sisson, the Company's general agent in Philadelphia, and Sisson, in turn, wrote to the home office in Baltimore on February 1, 1933, and received the following reply:

"Baltimore

February 6th, 1933.

F. P. Sisson, Gen. Agt.
Philadelphia, Pa.
Dear Sir:

69737—Louis Fishman

We acknowledge your letter of February 1st in reference to the above policy.

This policy lapsed for non-payment of the quarterly premium of $20.20 due August 20th, 1932 and in order to reinstate payment for the August and November, 1932 quarterly premiums would have to be made, totaling $40.40.

Application for reinstatement blank is enclosed which should be completed by the assured, signed, witnessed and returned to the medical examiner for his report on the reverse side; the examination at the assured's expense.

Upon receipt of the remittance and approval of the application for reinstatement blank we shall be pleased to revive this insurance.

Very truly yours,
Signed: E. A. Hartman,
Assistant Treasurer."

This letter was shown, or given, the assured not later than February 13, 1933, but he signed no written application for the reinstatement of the policy until March 6, 1933, at which time, under his policy,—the provisions of which he was bound to know, for it was still in his

possession,—a third premium due February 20, 1933 was *overdue,* and, under the clause of the policy, above quoted, and the provision of the Insurance Law of 1921, above referred to, had to be paid before the policy could be reinstated. The appellee claims that the clause in the policy allowing a grace of thirty-one days[2] applies to this payment, but it is clear that the 'grace' clause applies only to premiums which are payable while the policy is in force. Once the policy has lapsed for non-payment of premiums, all overdue premiums, without any 'grace' allowance, must be paid before it can be reinstated. The premiums are *due* on May 20, August 20, November 20 and February 20 (McDonough v. Prudential Ins. Co., 85 Pa. Superior Ct. 63; Ford v. Fidelity Mut. Life Ins. Co., 314 Pa. 54, 170 A. 270). If not then paid they are *overdue,* but while the policy is in force a grace period of thirty-one days is allowed and the premium is not in *default* until that period has expired. The policy is too clear for any misunderstanding on the subject.

On March 6, 1933, the assured signed an application for reinstatement of the policy and underwent a physical examination at the hands of the company's examining physician, Dr. Tunitzky. In answer to question 9, "Have you at any time learned anything from a physician or from a representative of an insurance company, that you were not a standard risk for life, health or accident insurance?" the photostatic copy shows that the answer "No" was first written in the doctor's handwriting, and then over it, "Yes, from Eureka, Maryland."

In the blank to be filled by the examining physician, the 13th question, "Does the applicant's general ap-

---

[2] "GRACE. A grace of thirty-one days (without interest charge) will be allowed in the payment of any premium after the first, *during which time the Policy will remain in force* ......" (italics supplied).

pearance indicate good health?" the photostatic copy shows that the answer began with a "Y", over which "No" was written in the doctor's handwriting. But the doctor, testifying as a witness for the plaintiff, said he wrote "No" and changed it to "Yes" which is what the answer "should have been." We accept his testimony, but it does not change the appearance to the eye, which is what would be presented to the company.

This application was held by the doctor, awaiting receipt of an authorization to make the examination from the Philadelphia office,—which seems to have been necessary—and on its receipt, a day or two after the examination, it was mailed by him to the home office in Baltimore.

The assured paid Franklin, the local agent, $40.40 about five o'clock of March 6, and the latter gave him a receipt as shown in the margin.[3] The form used was evidently prepared by the company for the receipt of ordinary premiums by the local agent, to be exchanged

---

[3] "No. 2614 A                                        *March 6, 1933.*
TEMPORARY RECEIPT
Received of                          *Louis Fishman*
*Forty Dollars and Forty cents*                /100 Dollars
*($40.40)* to be applied toward payment of the *2 quarterly premiums* annual premium due *(Reinstatement)* 19..., under Policy No. *69737.* if said policy is in force.
EUREKA-MARYLAND ASSURANCE CORPORATION,
*Jos. N. Franklin,* Agent.

IMPORTANT
Notify home office at Baltimore, Md., if official receipt is not received within 5 days.
THIS RECEIPT is not in any way binding upon the Corporation unless payment was made on or before the due date of above premium, or within the grace period, and before default in payment of any previous premium, or interest; neither is it to be construed as a waiver of any of the conditions of the policy or the lapse thereof, and must be returned in exchange for the Corporation's official receipt on printed form properly countersigned."

for an official receipt from the home office. The italics represent the written portions. Franklin was out of town the next day, and by the time he told Sisson, the general agent, that this money had been paid him, Fishman had died.[4] By direction of Sisson, he tendered the plaintiff a return of the money and asked for a return of the temporary receipt, but the plaintiff refused to take the money or return the temporary receipt.

The medical director of the insurance company testified for the defendant that he had not approved the application; that it was his duty to pass on all applications for reinstatement of policies; that this application had not been presented to him—probably for the reason that the applicant had died before the application was received at the home office—but that if he had received it, with the answers to question 9 of the application and question 13 of the physician's report, as they appeared in their altered form, he would not have approved the application for reinstatement without further inquiry.

The company refused payment of the policy on the ground that the policy had lapsed for non-payment of premiums and had not been reinstated at the time of Fishman's death, and the plaintiff thereupon brought this action.

In this state of the record, under the ruling of our Supreme Court in Riebel v. Prudential Ins. Co., 319 Pa. 24, 179 A. 447, the defendant was entitled to binding instructions. In fact this case is stronger than that one; for in the Riebel case the assured paid the company's agent the full amount of the overdue premiums in arrears, but died before the company had acted on his application for reinstatement. The application was signed May 31, 1932, the arrearages of premiums were paid on June 2, 1932 and the assured died on June 3,

---

[4] He died March 7, 1933.

1932. It is true that in that case, the company without knowledge of his death, on June 6, 1932 refused the application for reinstatement, but that was not decisive of the case. The Supreme Court said, Per Curiam: "Admittedly, the policy properly lapsed for nonpayment of the premium, and the burden of proof of the necessary facts compelling reinstatement was on the plaintiff. Admittedly also it was not in fact reinstated, and the ultimate question is, therefore, was defendant legally required, under the facts above set forth, without more, to approve the application for reinstatement. We agree with the court below that it was not. The policy provided that there should be no reinstatement unless 'evidence of the insurability of the insured satisfactory to the Company be furnished.' This is the exact statutory requirement for reinstatement: Section 410 (k) of the Insurance Company Law of May 17, 1921, P. L. 682, 723. No such satisfactory evidence was ever furnished to defendant. Nor is there anything on this record upon which to base a claim that defendant should have been satisfied as 'to the insurability of the insured,' from the papers furnished it at the time reinstatement was sought ...... It follows, that *even if the court could overlook the contractual and statutory requirement,* that 'the evidence of the insurability of the insured [must be] satisfactory to the Company,' *which, of course, it cannot do,* plaintiff has furnished no evidence which would justify either the court or jury in so determining on the unsatisfactory proof appearing in this record." (Italics supplied).

In the present case, the plaintiff failed in the burden resting on her in two respects: (1) Admittedly, the applicant for reinstatement had not paid the company or its agent all the overdue premiums, but only part of them. (2) Evidence of the insurability of the assured satisfactory to the company was not furnished the com-

pany, for he was dead before the application reached the company. We will discuss these in their order.

(1) The letter of the company written on February 6, 1933 cannot be held to have estopped the company from requiring compliance with the terms of the policy and the statutory requirement respecting an application made a month thereafter. The company's letter of February 6, 1933 in no way misled Fishman or induced him to do other than the policy required. When it was written it correctly stated that two quarterly premiums were then overdue, and that if these were paid *and the application for reinstatement was approved,* the insurance would be revived. This situation remained so until February 19, 1933, or for a week after Fishman had the letter. He had the policy in his possession and knew that a third premium was payable on February 20, 1933, and would be overdue unless paid on that date. The clause relating to 'grace' period in payment of premiums applies only to a policy in force, not to one that had lapsed because of default in payment of premiums. After February 20, 1933 he could not ask or require reinstatement of the policy unless he paid the company $60.60 in addition to furnishing evidence of his insurability satisfactory to the company. Payment of part of the overdue premiums would not be sufficient, under the policy and the statutory requirement, any more than payment of part of a first premium would satisfy them: Slocum v. N. Y. Life Ins. Co., 228 U. S. 371, 374. Even if it had the power to do so, the company did nothing, either in writing the letter of February 6, 1933 or subsequent thereto, which excused the assured from complying with the requirement of the policy and of the statute in this respect.

(2) The policy and the law of the State provide that the holder applying for reinstatement of the policy must produce evidence of his insurability satisfactory to the company. The physician examining the applicant is

not the judge of whether the evidence of insurability is satisfactory: Meerbach v. Metropolitan Life Ins. Co., 46 Pa. Superior Ct. 133, 135. It is the company that makes the decision. Until the application is received by the company evidence of the applicant's insurability has not been furnished or produced. If the applicant dies before the evidence of insurability, on which the company is to determine whether it is satisfactory or not, is furnished to the company, there is no reinstatement of the policy.

There is nothing in our cases relied on by the appellee (White v. Metropolitan Life Ins. Co., 22 Pa. Superior Ct. 501; Malchinsky v. Mutual Life Ins. Co., 90 Pa. Superior Ct. 1; Gross v. Home Life Ins. Co., 112 Pa. Superior Ct. 96, 170 A. 432) which is in conflict with our view of this case. In all of those cases there were circumstances which were sufficient to support a finding by the jury that the company had waived the production of evidence as to the insurability of the applicant for reinstatement. In our case the letter of February 6, 1933, produced by the plaintiff, specifically required it. Those cases, however, recognize that mere conditional acceptance of the overdue premiums would not revive the policy. Acceptance of overdue premiums before compliance with the other conditions is not a waiver of the latter: Mitchell v. Alta Life Ins. Co., 116 Pa. Superior Ct. 490, 176 A. 785. And in Pyrich v. Scranton Life Ins. Co., 94 Pa. Superior Ct. 159, and Geha v. Baltimore Life Ins. Co., 110 Pa. Superior Ct. 236, 168 A. 525, we have held that in reinstatement cases payment to an agent is not, of itself, payment to the company.

In Meerbach v. Metropolitan Life Ins. Co., supra, the application for reinstatement was signed on December 4; the medical examination was held December 12; the application and medical report were received at the home office on December 14. The 'assured' died Decem-

ber 15, before the application was passed upon; and on December 21, without knowledge that the applicant had died, a general officer stamped 'approved' on the application. It was held that these facts would not justify a summary judgment on the pleadings for the plaintiff.

The burden of proving the reinstatement of the policy was on the plaintiff: Riebel v. Prudential Ins. Co., supra; Mitchell v. Alta Life Ins. Co., supra; and as we have pointed out, she failed to meet that burden in two respects. Where the facts are clear and undisputed, it is for the court to decide whether the burden of proof has been met: Baxter v. N. Y. Life Ins. Co., 115 Pa. Superior Ct. 287, 175 A. 899.

Of the two cases from outside jurisdictions chiefly relied on by the appellee (Thompson v. Postal Life Ins. Co., 226 N. Y. 363; 123 N. E. 750; and Prudential Ins. Co. v. Union Trust Co., 56 Ind. App. 418, 105 N. E. 505), the former is easily distinguishable on the facts. The application was rejected arbitrarily, for no assigned reason, and the assured was in good health and lived over two years after the company repudiated the policy. The reasoning of the court in the other case, which allowed a recovery where the application was received at the home office two days after the assured's accidental death, does not appeal to us and we cannot follow it. Both of those cases were urged, without avail, upon our Supreme Court in the Riebel case.

Judgment reversed and here entered for defendant.