## Lang *v*. Bowen et al., Appellants.

Argued October 9, 1936.

Before KELLER, P. J., CUNNINGHAM,

BALDRIGE, STADTFELD, JAMES and RHODES, JJ.

*Joseph S. Conwell, Jr.,* with him *Joseph S. Conwell,* and *Pepper, Bodine, Stokes & Schoch,* for appellants.

*Morris C. Solomon,* with him *Samuel J. Becker,* for appellee.

OPINION BY BALDRIGE, J., January 29, 1937:

The question before us is whether the policy of life insurance, which had lapsed for non-payment of premiums, had been reinstated prior to the insured's death.

The motion made to quash the appeal may be considered overruled, as we will dispose of this cause on the main issue involved.

The case has been tried twice, which resulted each time in a verdict in plaintiff's favor.

The policy in question was issued September 19, 1929, upon the life of Harry A. Lang, naming his wife, the plaintiff, beneficiary, and providing for a premium of $1.25 payable the first day of each month. The policy contained the following provision:

"REINSTATEMENT

"The policy may be reinstated on written application by the Insured and the production of evidence of in-

surability of the Insured satisfactory to the Company, and approved at its Home Office, and payment of arrears of premiums, with interest at the rate of six per centum per annum......"

It also provided under the head of "MODIFICATIONS, ETC.," as follows:

"No agent has power on behalf of the Company to make or modify this or any contract of insurance, to extend the time for paying the premium, to waive any forfeiture or to bind the Company by making any promise or making or receiving any representation or information. These powers can be exercised only by the President, a Vice-President or the Secretary of the Company and will not be delegated and unless signed by one of them no modification, change or alteration hereof or endorsement hereon will be valid."

The premiums due on December 1, 1932, and January 1, 1933, were not paid on those dates, nor within the grace period of thirty-one days. The insured was taken sick and confined to his bed on February 13, 1933, and continued ill until his death. On the 27th of that month, at 9 a. m., the insured's son went to the office of the insurance company and stated that his father was ill. He paid $3.75, the amount of the premiums due December 1, 1932, January 1st, and February 1, 1933, and received a receipt therefor. At 11 a. m. the same day the insured died.

On eleven former occasions the insured had defaulted in the payments of his premiums, and, in each instance, the insurance company had accepted them when past due without requiring any proof of the insurability of the insured. The receipts were countersigned by an authorized agent and also signed by the treasurer of the company until May, 1932; those given thereafter were signed by the secretary instead of the treasurer. The last receipt, which is similar in form to the earlier receipts, reads as follows:

"The Federal Union Life Insurance Co. of Cincinnati, Ohio, if this receipt is dated and countersigned by an authorized agent of the Company, hereby acknowledges payments of the premium of $1.25 due on the 1st day of April, 1932, on Policy numbered A56707.

"Countersigned by Authorized Agent

"L. M. Rachar Date 4/19/1932.

"Church E. Brotton

"Secretary."

It will be observed this is an unconditional receipt; there is nothing therein which indicates that the company required the insured to furnish a certificate or do any further act to keep the policy in full force.

Concededly, the burden of proof was on the plaintiff to establish a waiver of any requirement of the policy and its reinstatement. She contends that she successfully carried the burden by showing a course of conduct by the defendants permitting numerous revivals without complying with the provisions of the written application requiring evidence of insurability; the acceptance of the money sufficient to pay all the premiums due, with knowledge of the facts; and the retention of the money for an unreasonable length of time without making any further demand.

In *White v. Metropolitan Life Ins. Co.*, 22 Pa. Superior Ct. 501, 505, 506, we said:

"Nor are we prepared to give our assent to a construction of the revival clause which would relieve the the company under any and all circumstances from the obligation of indicating to the policy holder the kind of evidence that would be satisfactory. ......We cannot say that under such circumstances the attempted revival of the policy would be defeated by the omission of the policy holder to take the initiative and to proceed with the production of evidence until the company expressed satisfaction with it both as to quantum and quality."

In that case there was a general course of conduct from which it could be naturally and reasonably inferred that the company waived the production by the insured of evidence of insurability.

In *Malchinsky v. Mutual Life Ins. Co.*, 90 Pa. Superior Ct. 1, the insured, after permitting his policy to lapse by failure to pay the premiums, paid arrearages by check, dated September 17, 1923. Several days later he went to the office of the company's medical examiner, but as the doctor had no application blanks he was told to return. The insured died on the 30th of September, not having again visited the doctor's office. As in the case at bar, there was no provision in the policy requiring a written application or a report from the defendant's medical examiner as an essential prerequisite to reinstatement; the only requirement was "evidence of insurability satisfactory to the company." Following *White v. Metropolitan Life Ins. Co.*, supra, we held that the acceptance of the premiums and their retention beyond a reasonable length of time without demanding proof of insurability was sufficient to establish that the company had waived the production of further evidence of insurability. In the course of the opinion, 'we said (p. 11) :

"The principle that if an insurer accepts payment of a premium, with knowledge that a fact exists which, by the terms of the policy, will render the contract of insurance void, the acceptance of the premium is a waiver of the right to void the policy for such breach, would seem to be applicable to the situation here shown to exist."

In *Gross v. Home Life Ins. Co.*, 112 Pa. Superior Ct. 96, 170 A. 432, the policy had lapsed several times and was reinstated upon payment of the overdue premiums and without a physical examination. On August 24, 1925, the insured defaulted in his payment, and an application for reinstatement, together with premium

for which an additional receipt had been given, was forwarded to the company and received by it December 1, 1925. The application contained the statement that the insured agreed that the policy should not be reinstated by reason of any money paid until the certificate was approved by the executive office. The company made no request for further proof of insurability before the death of the insured, which occurred twenty days after he had signed the application for reinstatement. We held that it was for the jury to determine whether a sufficient time had elapsed for the company to have rejected or accepted the application.

Of course, the acceptance and retention of a past due premium that would bind the company must be by one having proper authority: *Pyrich v. Scranton Life Ins. Co.*, 94 Pa. Superior Ct. 159. In this case the money was paid at the office of the company to an employee of the company's manager who was described in the receipt as an "authorized agent," who countersigned the receipt, which was also signed by the secretary of the company, who, by the terms of the policy above quoted, was authorized to remit forfeitures. True, no proof of insurability was given, but none was asked for. The secretary of the company accepted the overdue premium on the last occasion, as had been done eleven times previously. No request was made to sign a reinstatement form until March 10, 1933, the day after the plaintiff went to the office to get a blank to make out proof of death. This course of conduct justified the plaintiff in relying upon the company's assent to the waiver of forfeiture. As the learned court below said: "If he had not intended to waive forfeiture without 'payment of premium and proof of insurability,' the Secretary should have declined to accept the premiums without proof."

The appellants rely largely on *Mitchell v. Alta Life Ins. Co.*, 116 Pa. Superior Ct. 490, 176 A. 785, and

*Iwankow, Admrx., v. Colonial Life Ins. Co.,* 120 Pa. Superior Ct. 114, 181 A. 870.

The sole issue in the Mitchell case was whether the insured was in sound health at the time of the re-instatement of the policy. For reinstatement, the policy required: (a) payment of all premiums in arrears; (b) satisfactory evidence of insurability; (c) that the insured be living and in sound health. It will be observed that this last condition was not present in the case at bar; nor was there a course of conduct in that case which induced the belief that the insurer would not require compliance with the reinstatement condition, as provided for in the policy. We held that the burden of proving a revival of the policy was upon the plaintiff and that he did not establish a waiver of the other provisions in the policy by merely showing acceptance of the premiums in arrears. That decision, which is not in conflict with the views expressed herein, must be interpreted in connection with the facts and issues there involved, which are quite different from those in the present case.

In the Iwankow case, the policy, in addition to evidence of insurability, likewise required that the insured be in sound health. On December 31, 1931, he paid the premium then in arrears and received a temporary receipt, which provided that the company would not be liable unless the payment had been entered in the premium receipt book. We there said (p. 119) : "The record before us does not show any fact or facts from which it might be inferred that the defendant waived its right to a compliance with the conditions precedent to the revival of the policy, by *conditionally accepting* payment of the premiums on December 31, 1931. ......The acceptance of premiums by the defendant, under the policyholder's temporary receipt, and under the facts shown at the trial, did not constitute a revival of the policy. See *Riebel v. Prudential Insurance Company*

*of America,* 319 Pa. 24, 179 A. 447; *Geha v. Baltimore Life Ins. Co.,* 110 Pa. Superior Ct. 236, 168 A. 525." (Italics supplied.)

In the Riebel case, the insured applied for reinstatement. The receipt for arrearages paid provided that "in no case shall this receipt be construed as renewing or creating any liability." The insured was examined on June 2, 1932, by the company's medical examiner, and on June 6, 1932, the company, without knowledge of the insured's death on June 3d, refused the application. The court held that the policy had not been reinstated.

In the Geha case, we cited with approval *White v. Metropolitan Life Ins. Co.,* supra, but held that the plaintiff failed to trace payments into the hands of defendant, inasmuch as the agent had not cashed or turned the checks over to the company. The receipt there was only an emergency one, and not a regular, unconditional receipt signed by the president or secretary and countersigned by the agent, as provided by the policy, and it was not shown that the company waived its forfeiture of the policy.

In *Fishman v. Assurance Corp.,* 120 Pa. Superior Ct. 490, 183 A. 98, the policy had lapsed for non-payment of premium, and the assured, having inquired as to reinstatement, was sent a reinstatement blank to be signed, and was told that he must furnish a report from the medical examiner. On March 6, 1933, he signed the application for reinstatement of the policy, was examined by the company's medical examiner, paid arrearages in premiums, and received a conditional receipt that it was not to be construed as a waiver. The assured died the next day, before the application could be received at the home office and acted upon, although the company's medical examiner testified that he would not have approved the same. We held that as the applicant had died before the requested evidence

of insurability, on which the company was to determine whether it was satisfactory or not, was furnished to the company, there was no reinstatement of the policy. We there took occasion to state that *White v. Metropolitan Life Ins. Co.,* supra; *Malchinsky v. Mutual Life Ins. Co.,* supra; *Gross v. Home Life Ins. Co.,* supra, were not in conflict with that case, as in those cases there were circumstances which were sufficient to support a finding by the jury that the company had waived the production of evidence as to the insurability of the applicant for reinstatement, and that they recognized the mere conditional acceptance of the overdue premiums would not revive the policy.

The whole question of waiver is usually one of fact for a jury to determine under proper instructions. But, as pointed out by the trial judge in his opinion, the essential facts involved in this case were not in dispute and at the trial the parties indicated that they did not want the issues of fact submitted to a jury, relying upon the legal principles involved.

A careful consideration of the appellants' argument fails to convince us that the judgment entered in the court below should be disturbed.

Judgment affirmed.