Stager *v.* Federal Life Insurance Company, Appellant.

Argued October 16, 1936.

Before KELLER, P. J., CUNNINGHAM BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Henry S. Ambler,* with him *Frank R. Ambler* and *Harry S. Ambler, Jr.,* for appellant.

*Samson B. Bernstein,* for appellee.

OPINION BY PARKER, J., January 29, 1937.

This is an action by the beneficiary named in a policy of life insurance to recover the face amount of the policy on the death of the insured. The question involved in this appeal is whether the policy was in force at the time of the insured's death.

In answer to plaintiff's statement of claim alleging that the policy was issued, the premiums were paid and the insured had died, the defendant replied that the policy had lapsed for failure to pay in time a premium, which was due on July 4, 1932, with a period of grace of one month. To this plaintiff answered that the premium was paid by "United States Postal Money Order between July 4, 1932, and August 4, 1932, in the sum of $5.00, which was duly received and credited to plaintiff's account and receipted for by G. E. Matthews, superintendent, duly authorized agent for collection of defendant corporation," and in addition that plaintiff had paid all premiums due until the death of the insured on January 30, 1933, which premiums were retained by the defendant thereby reinstating the policy. The case was tried in the municipal court by a judge without a jury and judgment was entered for the plaintiff for the full amount claimed.

We will consider separately the two matters relied upon by the appellee and the court below to sustain the judgment, to wit, the payment of the premium due July 4, 1932, and the alleged reinstating of the policy by retention of premiums. The trial court found, as stated in its memorandum opinion, "that the premium due July 4, 1932, was paid by a United States Postal money order prior to August 4, 1932; that defendant

having either mislaid or lost said money order, plaintiff thereupon sent a duplicate money order issued under date of August 13, 1932, which was duly received and credited to plaintiff's account." We are at a loss to understand how the learned judge of the court below could have made this finding as there is not a scintilla of evidence to support it. In fact, as we shall show, the plaintiff's own evidence is directly to the contrary.

The defendant, prior to the trial, took the deposition of its assistant secretary located at Chicago. This deposition gave a picture of the transactions between the parties from the standpoint of the records of the defendant and identified a number of letters and checks which had passed between them. The plaintiff testified on her own behalf and also offered the deposition taken by defendant with the correspondence and exhibits. This she had a right to do: *O'Connor v. American Iron Mountain Co.,* 56 Pa. 234, 238; *Gordon & Walker v. Little,* 8 S. & R. 533. The defendant offered no evidence.

The plaintiff in her pleadings had alleged that she had made a payment in July as found by the court, but her testimony on the trial did not support the allegation. Her own testimony proved that the only payment of premium attempted to be made in July, 1932, was by the personal check of the plaintiff on the Palmyra National Bank of New Jersey. That check was received by the defendant but the Palmyra Bank refused to pay the check on presentation, answering "Not Sufficient Funds." Plaintiff was promptly advised that the check was not good. Her testimony also showed that the money order which she claimed was lost was not purchased until August 13, 1932, after the period of grace for payment of premium due July 4, 1932, had expired, and a duplicate was not procured by her until November 22, 1932. There was not any evidence show-

ing that the original money order was ever received by defendant or lost through its fault.

Not only so, but plaintiff's evidence disclosed conclusively that the payment due July 4, 1932, was not made or tendered until the policy had lapsed. We will refer to the evidence which established such failure to pay the premium when due. The policy in question was dated January 4, 1929, and called for the payment of a premium of one dollar on the fourth day of each month in advance at the home office of the company in Chicago, Illinois, or to a person authorized to receive such premiums. All payments of premiums which were made after the first payment in 1929 were made by remittances to the home office. The policy further provided: "If any premium or part of a premium shall not be paid when due or within the period of grace (one month) this policy shall become void, except as otherwise herein provided, without notice to any person interested." The insured was a brother of the beneficiary and the premiums were paid by the beneficiary. The defendant had also issued a similar insurance policy calling for a like monthly premium on the life of the plaintiff's husband and it was the plaintiff's custom to pay the premiums on both policies at the same time, the premiums on the husband's policy being due on the 28th of each month.

Although Mrs. Stager testified that the premiums due on the policies were paid by check or money order and that a receipt for the premiums so paid was evidenced by a written receipt of the company returned each time within a week of the remittance, she produced neither checks nor receipts. The receipts would undoubtedly have shown the precise months for which payments were made. The deposition offered by her showed that until April 4, 1932, the plaintiff had paid the premiums before they were due, the premium due on that date having been paid in March, but that she

did not make any payment in April so that when a payment of two dollars was made on May 5, 1932, it covered the premium due April 28 on her husband's policy and the one due May 4 on her brother's policy. In like manner the premium due June 4 was paid by check received by defendant on June 21. No payment having been made in July or on or before August 4, 1932, the policy by its terms lapsed. That the deposition correctly fixed the dates to which the payments applied was confirmed by plaintiff's own correspondence. By letter dated August 8, 1932, the defendant returned the check which had not been honored and advised plaintiff that it was a payment intended to cover the premium due on July 4 and that the policies were lapsed. Apparently acknowledging the correctness of the statements of the company, applications were made in August for the reinstatement of the brother's policy, but the application being in improper form was returned to her. On August 13, plaintiff, as shown by the post office records, purchased a money order for five dollars, but it was lost and never received by the company. On September 12, 1932, plaintiff wrote the defendant stating that the June payment was made by check of July 11, thus confirming the statement in the deposition. She then added: "My check for July payment was returned insufficient a bank error. I then forwarded a P. M. M. O. for five dollars which should pay July and August, and one dollar for a year's premium Mr. Stager's accident. The money order was for five dollars. Then in my last letter I sent a money for $2 dated September 6 which would be for September's premium." Likewise in a letter from Mrs. Stager to the company dated August 26, 1932, she identified the dishonored check and the money order as covering the July payment. It is true that Mrs. Stager did make the bald assertion that she made the April payment. That was true for it was

paid on March 28th, but she made no payment during April.

Even if we were to assume that Mrs. Stager meant to say that she made a payment during the month of April, that would not be sufficient to overcome the other positive evidence by records and letters placed in evidence by her. The bare statement that she made a payment in April would be no more than a conclusion for she had shown that the company did not receive any payment in April and she did not testify to sufficient facts to create the presumption that arises from proof of mailing of a letter properly addressed with postage prepaid. The plaintiff's own proof uncontradicted established the fact that the July payment was not made when due or within the period of grace. The finding by the trial judge that the July premium was paid before lapse is without support and cannot stand.

The second position of the appellee is that the defendant waived the lapse or consented to a reinstatement by a retention of premiums. The policy provided that after default the policy would be reinstated "upon written application therefor, subject to evidence of insurability satisfactory to the company and also subject to any indebtedness existing against the policy at the date of default, with interest thereon and the payment of past due premiums with interest thereon at 6% per annum."

Undoubtedly an insurance company may under some circumstances by the receipt and retention of premiums until after the death of the insured be held to have waived the production of evidence as to the insurability of an applicant for reinstatement (*White v. Met. Life Ins. Co.*, 22 Pa. Superior Ct. 501; *Malchinsky v. Mutual Life Ins. Co.*, 90 Pa. Superior Ct. 1; *Gross v. Home Life Ins. Co.*, 112 Pa. Superior Ct. 96, 170 A. 432), but the mere conditional acceptance of the overdue premiums will not revive the policy and the burden of proof is

on the beneficiary in an action on the policy to show revival of the policy by compliance with its terms: *Fishman v. Assurance Corp.*, 120 Pa. Superior Ct. 490, 499, 183 A. 98; *Mitchell v. Alta Life Ins. Co.*, 116 Pa. Superior Ct. 490, 176 A. 785. On August 8, 1932, the company advised the plaintiff that the policies were lapsed for non-payment of premiums due and at the same time furnished her with blank forms of application for reinstatement and advised her as to the amount that would have to be paid to secure the reinstatement. Application was so made but on September 1, 1932, the application was returned because the insured had not answered all questions called for in the application, and she was advised that the statement of the date of birth of insured did not correspond with that given in the original application. The application was again sent to the company but was returned on September 9, 1932, because all the blanks had still not been filled. The application for reinstatement was again sent to the company but on September 19, 1932, the company wrote the plaintiff and advised her that her husband's application for reinstatement had been granted but that of her brother had not been because they had not received a satisfactory answer to one of the questions on the blank form. The letter contained the following statement: "On your brother's health certificate under question No. 6 which reads as follows: 'Have you now any diseases or disorders? If any, give details' he has inserted 'Bladder'. If that question is answered correctly and he now has a bladder disorder he would not be insurable. We are returning the application for him to modify if that question is incorrectly answered." On October 6, October 26, November 3 and November 11, the company wrote the plaintiff calling her attention to the fact that they had not received the corrected request for reinstatement. Under date of November 22, 1932, the plaintiff secured from the post office de-

partment a duplicate of the money order of August 13, 1932, and forwarded it to the company. On November 29 the company acknowledged receipt of the duplicate money order and advised her as follows: "It is being held in suspense awaiting instruction from you. We can apply it to cover the December, January, February, March and April 28th premiums on your husband's policy No. PI-605558 if you desire. Your brother's policy as we have explained is not in force. If he wants to reinstate his contract it will be necessary that he complete the inclosed health certificate. If and when that form is approved by our Underwriter his insurance could be reinstated and the $5 money order being held in suspense would then be applied in payment of the July, August, September, October and November 4th premiums." During the period between August and the death of the insured on January 30, 1933, the plaintiff sent to the company various money orders which with the duplicate money order would have been sufficient to have paid the premiums up to and including January, 1933. However, in a succession of letters during this period, some of which were in answer to letters from the plaintiff and remittances from the plaintiff, the company each time advised the plaintiff that the money received was being held in suspense and would be held subject to her order or could be applied to the payment of the premiums on her husband's policy. The correspondence set forth in no uncertain terms the fact that the policy had been lapsed, that the payments were not received in payment of the premiums on her brother's policy, and that nothing could be done until the company received a proper health certificate. This was not furnished.

Under the circumstances the beneficiary did not sustain the burden of proof that was on her to show that the policy had been reinstated. The parties were con-

stantly in correspondence as to the reinstatement of the policy and it was a condition precedent to such reinstatement that all premiums should be paid. Under such circumstances the receipt and retention of the premiums were conditional, dependent on the completion of satisfactory proofs of good health. There is here no ground for an estoppel as against the company as the plaintiff could not have been misled. If the company improperly applied the premiums received to the payment of the premiums due on her husband's policy, that might be the basis of a separate claim against the company, but it forms no basis for an assumption that the company waived the right to receive proofs of insurability. To retain the premiums under the circumstances shown was the most natural thing to do and not in any way inconsistent with the company's demand for a health certificate. The keeping of the money was in anticipation of the receipt of a certificate of good health: *Gould v. Equitable Life Assur. Soc.*, 231 N. Y. 208, 131 N. E. 892, 894. There was not any evidence to sustain a finding by the court below that the company had waived receipt of proper proofs of insurability.

It appears by plaintiff's own evidence that the policy, by its terms, had lapsed and was not in force on the date of the death of the insured.

Judgment reversed and here entered for the defendant.